Dethorne GRAHAM, Plaintiff,

v.

CITY OF CHARLOTTE, M.S. Connor, R.B. Townes, T. Rice, Hilda P. Matos, and M.M. Chandler, Defendants.

No. C–C–85–439–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Sept. 19, 1986.

Edward G. Connette, Harper, Connette & Stovall, Charlotte, N.C., for plaintiff.

Frank B. Aycock, III, Charlotte, N.C., for defendants.

### ORDER

ROBERT D. POTTER, Chief Judge.

This is an action by Plaintiff brought under Title 42 U.S.C. § 1983 against the City of Charlotte and the individual police officers for damages for denial of Plaintiff's civil rights as a result of the alleged use of excessive force by the police officers in restraining the Plaintiff on November 12, 1984. The Plaintiff further alleges that the Defendants unlawfully assaulted Plaintiff, unlawfully restrained him, constituting false imprisonment and intentionally inflicted mental and emotional distress on Plaintiff in violation of the common law of North Carolina. The Plaintiff also alleges that the actions of the City of Charlotte in not properly training its officers to identify and respond to medical emergencies violate Section 504 of the Rehabilitation Act of 1973, Title 29 U.S.C. § 794, and North Carolina General Statute § 168–2.

At the close of the Plaintiff's evidence all of the Defendants moved for a directed verdict pursuant to Rule 50 of the Federal Rules of Civil Procedure.

The Court, of course, in ruling on the Motion must consider the evidence in the light most favorable to the Plaintiff. *Galloway v. U.S.*, 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458 (1943); *McClure v. Price*, 300 F.2d 538 (4th Cir.1962); *Phoenix Savings & Loan, Inc. v. Aetna Casualty & Surety Co.*, 427 F.2d 862 (4th Cir.1970).

The evidence, when reviewed in the light most favorable to the Plaintiff, is that on November 12, 1984, the Plaintiff, who was a diabetic, had an insulin reaction at approximately 1:55 p.m., while doing mechanical work on an automobile at his shop. He asked his friend William Berry to drive him to a convenience store, the Pilot store, in order for him to obtain some orange juice to counteract his insulin reaction.

When they arrived at the store, where the Defendant officer Connor was parked in his patrol car, the Plaintiff rapidly exited or ran into the store and on seeing a line of four or five persons at the counter, did not want to wait and ran or walked rapidly out of the store and returned to Berry's automobile, and told Berry, to take him to his girlfriend's house or pointed in the direction of his girlfriend's house, where the Plaintiff testified he could obtain the orange juice he needed. As Berry drove out of the convenience store parking lot, he was followed by Officer Connor who stopped him approximately one half mile away. Officer Connor observed the Plaintiff in the passenger seat and told Berry he would have to wait until Officer Connor determined what, if anything, Plaintiff had done in the convenience store.

Plaintiff, suffering from his insulin reaction, then exited Berry's automobile and ran around it twice. Berry then asked Officer Connor to help him catch Plaintiff, and suggested that Officer Connor go one way around the car and that he, Berry, would go the other way. On seeing Berry

and Connor coming from opposite directions, Plaintiff sat down on the curb and Officer Connor and Berry knelt down to see what was wrong with Plaintiff. The Plaintiff apparently passed out and the next thing he remembered was that he was handcuffed and lying face down on the sidewalk and that in addition to Connor there were four other police officers. These police officers had arrived in response to a call for a back up by Officer Connor.

Meanwhile, a crowd had gathered around and Officer Townes testified that it appeared things were getting out of hand.

The Plaintiff testified that the officers picked him up and with his hands cuffed behind his back placed him against and over the hood of Berry's car. The Plaintiff then tried to reach for his wallet in his hip pocket and lifted his head up to tell the officers that he was a diabetic and wanted his wallet to show his diabetic identification. One of the officers, Matos, shoved his head down and told him to shut up that no one had asked him anything. At some point during the incident, Plaintiff was asked if he wanted medical assistance and he declined.

The officers then attempted to place the Plaintiff in Officer Connor's patrol car and the Plaintiff vigorously resisted this effort, by kicking and otherwise attempting to keep from being placed in the car. The evidence was that two officers were pushing from behind and one entered the vehicle from the other side and pulled on the Plaintiff until he was in the car.

Officer Connor then determined that the Plaintiff had not done anything unlawful while in the convenience store, but was advised by his dispatcher that the Plaintiff was the owner of one or more guns.

The Plaintiff was then immediately driven home and his hands were uncuffed. He again was asked if he wanted medical assistance and he declined.

Plaintiff's witness, Berry, testified that he did not see any officer push or strike the Plaintiff, except when his head was pushed down on the hood of his automobile. However, Berry testified that his head made no sound when pushed against the hood.

The Court does not find, considering the evidence in the light most favorable to the Plaintiff, that there was excessive force used by the police officers rising to the level of violation of his constitutional rights.

■ The factors to be considered in determining when the excessive use of force gives rise to a cause of action under § 1983 are identified as

(1) The need for the application for the force.

(2) The relationship between the need and the amount of the force that was used.

(3) The extent of the injury inflicted.

(4) Whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm.

*King v. Blankenship*, 636 F.2d 70 (4th Cir.1980), citing *Johnson v. Glick*, 481 F.2d 1028 at 1033.

■ The Plaintiff's evidence, when considered in the light most favorable to him, shows:

(1) The Plaintiff was having an insulin reaction and was in such a state of agitation that his witness Berry asked Officer Connor to help him to catch him.

(2) The amount of force used consisted of handcuffing the Plaintiff which even his own witness, Dr. Meadows, testified was appropriate under the circumstances.

(3) There was no discernable injury inflicted on the Plaintiff. It is true that the Plaintiff's foot was broken during the scuffle with the police. There is absolutely no evidence that the Defendant police inflicted any injury on the Plaintiff.

(4) It is quite evident that what force was applied was a good faith effort

to maintain or restore order in the face of a potentially explosive situation and was not applied maliciously or sadistically for the very purpose of causing harm.

This Court does not deem every push or shove under the circumstances of this case to rise to the level of a violation of constitutional rights.

It is a far cry from the situation on the line in the face of a potentially hostile crowd, and the peaceful atmosphere of the courtroom. These officers were faced with a man whose initial stop was entirely proper, and whose restraint was entirely proper. They were faced with a gathering crowd. Crowds can often become unruly. The most expedient way to avoid a confrontation was to remove the Plaintiff from the scene.

A suggestion was made that a police supervisor should have been called. This would have entailed another 15 or 20 minutes of police presence with a crowd gathering.

Obviously, since the officers have been found by the Court not to have violated the Plaintiff's constitutional rights, for use of excessive force, there would not be any liability on the part of the City of Charlotte.

■ The Plaintiff's Complaint contained allegations that the City violated Plaintiff's civil rights by failing to supervise or properly train its police officers to identify and respond to the Plaintiff's medical problem, by failing to supervise or train its police officers to insure that reasonable alternatives to the restraint used on Plaintiff were known and available to officers, that Plaintiff was a qualified handicapped person on November 12, 1984, and that the City or its police officers discriminated against Plaintiff on the basis of his handicap.

The evidence, however, shows, taking Plaintiff's witness Dr. Meadows' testimony, that the Charlotte Police Department's training of its officers met or exceeded the number of hours required by the State.

■ Further, § 504 of the Rehabilitation Act of 1973, Title 29 U.S.C. § 794, refers to discrimination against a handicapped person by reason of his handicap by exclusion from any program or activity receiving Federal Financial Assistance. The stopping of the Plaintiff under the circumstances of this case and the restraint of the Plaintiff who was having an insulin reaction by no stretch of the imagination would be prohibited by N.C.G.S. § 168–2, § 504 of the Rehabilitation Act of 1973.

NOW, THEREFORE, IT IS ORDERED that all Defendants' Motions for a directed verdict as to all counts of the Plaintiff's Complaint are GRANTED.