# GRAHAM *v.* CONNOR ET AL.

No. 87–6571.  Argued February 21, 1989—Decided May 15, 1989

Rehnquist, C. J., delivered the opinion of the Court, in which White, Stevens, O'Connor, Scalia, and Kennedy, JJ., joined. Blackmun, J., filed an opinion concurring in part and concurring in the judgment, in which Brennan and Marshall, JJ., joined, *post*, p. 399.

*H. Gerald Beaver* argued the cause for petitioner. On the briefs was *Richard B. Glazier.*

*Mark I. Levy* argued the cause for respondents. On the brief was *Frank B. Aycock III.*\*

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

This case requires us to decide what constitutional standard governs a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other "seizure" of his person. We hold that such claims are properly analyzed under the Fourth Amendment's "objective reasonableness" standard, rather than under a substantive due process standard.

In this action under 42 U. S. C. § 1983, petitioner Dethorne Graham seeks to recover damages for injuries allegedly sustained when law enforcement officers used physical force against him during the course of an investigatory stop. Because the case comes to us from a decision of the Court of Appeals affirming the entry of a directed verdict for respondents, we take the evidence hereafter noted in the light most favorable to petitioner. On November 12, 1984, Graham, a diabetic, felt the onset of an insulin reaction. He asked a friend, William Berry, to drive him to a nearby convenience store so he could purchase some orange juice to counteract the reaction. Berry agreed, but when Graham entered the store, he saw a number of people ahead of him in the check-

---

*Briefs of *amici curiae* urging reversal were filed for the United States by *Solicitor General Fried, Assistant Attorney General Reynolds, Deputy Assistant Attorney General Clegg, David L. Shapiro, Brian J. Martin,* and *David K. Flynn;* and for the American Civil Liberties Union et al. by *Steven R. Shapiro.*

*Lacy H. Thornburg,* Attorney General of North Carolina, *Isaac T. Avery III,* Special Deputy Attorney General, and *Linda Anne Morris,* Assistant Attorney General, filed a brief for the State of North Carolina as *amicus curiae* urging affirmance.

out line. Concerned about the delay, he hurried out of the
store and asked Berry to drive him to a friend's house
instead.

Respondent Connor, an officer of the Charlotte, North
Carolina, Police Department, saw Graham hastily enter and
leave the store. The officer became suspicious that some-
thing was amiss and followed Berry's car. About one-half
mile from the store, he made an investigative stop. Al-
though Berry told Connor that Graham was simply suffering
from a "sugar reaction," the officer ordered Berry and Gra-
ham to wait while he found out what, if anything, had hap-
pened at the convenience store. When Officer Connor re-
turned to his patrol car to call for backup assistance, Graham
got out of the car, ran around it twice, and finally sat down on
the curb, where he passed out briefly.

In the ensuing confusion, a number of other Charlotte po-
lice officers arrived on the scene in response to Officer Con-
nor's request for backup. One of the officers rolled Graham
over on the sidewalk and cuffed his hands tightly behind his
back, ignoring Berry's pleas to get him some sugar. An-
other officer said: "I've seen a lot of people with sugar dia-
betes that never acted like this. Ain't nothing wrong with
the M. F. but drunk. Lock the S. B. up." App. 42. Sev-
eral officers then lifted Graham up from behind, carried him
over to Berry's car, and placed him face down on its hood.
Regaining consciousness, Graham asked the officers to check
in his wallet for a diabetic decal that he carried. In re-
sponse, one of the officers told him to "shut up" and shoved
his face down against the hood of the car. Four officers
grabbed Graham and threw him headfirst into the police car.
A friend of Graham's brought some orange juice to the car,
but the officers refused to let him have it. Finally, Officer
Connor received a report that Graham had done nothing
wrong at the convenience store, and the officers drove him
home and released him.

At some point during his encounter with the police, Graham sustained a broken foot, cuts on his wrists, a bruised forehead, and an injured shoulder; he also claims to have developed a loud ringing in his right ear that continues to this day. He commenced this action under 42 U. S. C. § 1983 against the individual officers involved in the incident, all of whom are respondents here,[1] alleging that they had used excessive force in making the investigatory stop, in violation of "rights secured to him under the Fourteenth Amendment to the United States Constitution and 42 U. S. C. § 1983." Complaint ¶ 10, App. 5.[2] The case was tried before a jury. At the close of petitioner's evidence, respondents moved for a directed verdict. In ruling on that motion, the District Court considered the following four factors, which it identified as "[t]he factors to be considered in determining when the excessive use of force gives rise to a cause of action under § 1983": (1) the need for the application of force; (2) the relationship between that need and the amount of force that was used; (3) the extent of the injury inflicted; and (4) "[w]hether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm." 644 F. Supp. 246, 248 (WDNC 1986). Finding that the amount of force used by the officers was "appropriate under the circumstances," that "[t]here was no discernable injury inflicted," and that the force used "was not applied maliciously or sadistically for the very purpose of causing harm," but in "a good faith effort to maintain or restore order in the face of a potentially explosive

---

[1] Also named as a defendant was the city of Charlotte, which employed the individual respondents. The District Court granted a directed verdict for the city, and petitioner did not challenge that ruling before the Court of Appeals. Accordingly, the city is not a party to the proceedings before this Court.

[2] Petitioner also asserted pendent state-law claims of assault, false imprisonment, and intentional infliction of emotional distress. Those claims have been dismissed from the case and are not before this Court.

situation." *id.*, at 248–249, the District Court granted respondents' motion for a directed verdict.

A divided panel of the Court of Appeals for the Fourth Circuit affirmed. 827 F. 2d 945 (1987). The majority ruled first that the District Court had applied the correct legal standard in assessing petitioner's excessive force claim. *Id.*, at 948–949. Without attempting to identify the specific constitutional provision under which that claim arose,[3] the majority endorsed the four-factor test applied by the District Court as generally applicable to all claims of "constitutionally excessive force" brought against governmental officials. *Id.*, at 948. The majority rejected petitioner's argument, based on Circuit precedent,[4] that it was error to require him to prove that the allegedly excessive force used against him was applied "maliciously and sadistically for the very purpose of causing harm."[5] *Ibid.* Finally, the majority held that a reasonable jury applying the four-part test it had just en-

---

[3] The majority did note that because Graham was not an incarcerated prisoner, "his complaint of excessive force did not, therefore, arise under the eighth amendment." 827 F. 2d, at 948, n. 3. However, it made no further effort to identify the constitutional basis for his claim.

[4] Petitioner's argument was based primarily on *Kidd* v. *O'Neil*, 774 F. 2d 1252 (CA4 1985), which read this Court's decision in *Tennessee* v. *Garner*, 471 U. S. 1 (1985), as mandating application of a Fourth Amendment "objective reasonableness" standard to claims of excessive force during arrest. See 774 F. 2d, at 1254–1257. The reasoning of *Kidd* was subsequently rejected by the en banc Fourth Circuit in *Justice* v. *Dennis*, 834 F. 2d 380, 383 (1987), cert. pending, No. 87–1422.

[5] The majority noted that in *Whitley* v. *Albers*, 475 U. S. 312 (1986), we held that the question whether physical force used against convicted prisoners in the course of quelling a prison riot violates the Eighth Amendment "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" 827 F. 2d, at 948, n. 3, quoting *Whitley* v. *Albers, supra*, at 320–321. Though the Court of Appeals acknowledged that petitioner was not a convicted prisoner, it thought it "unreasonable . . . to suggest that a conceptual factor could be central to one type of excessive force claim but reversible error when merely considered by the court in another context." 827 F. 2d, at 948, n. 3.

dorsed to petitioner's evidence "could not find that the force applied was constitutionally excessive." *Id.*, at 949–950. The dissenting judge argued that this Court's decisions in *Terry* v. *Ohio*, 392 U. S. 1 (1968), and *Tennessee* v. *Garner*, 471 U. S. 1 (1985), required that excessive force claims arising out of investigatory stops be analyzed under the Fourth Amendment's "objective reasonableness" standard. 827 F. 2d, at 950–952. We granted certiorari, 488 U. S. 816 (1988), and now reverse.

Fifteen years ago, in *Johnson* v. *Glick*, 481 F. 2d 1028, cert. denied, 414 U. S. 1033 (1973), the Court of Appeals for the Second Circuit addressed a § 1983 damages claim filed by a pretrial detainee who claimed that a guard had assaulted him without justification. In evaluating the detainee's claim, Judge Friendly applied neither the Fourth Amendment nor the Eighth, the two most textually obvious sources of constitutional protection against physically abusive governmental conduct.[6] Instead, he looked to "substantive due process," holding that "quite apart from any 'specific' of the Bill of Rights, application of undue force by

---

[6] Judge Friendly did not apply the Eighth Amendment's Cruel and Unusual Punishments Clause to the detainee's claim for two reasons. First, he thought that the Eighth Amendment's protections did not attach until after conviction and sentence. 481 F. 2d, at 1032. This view was confirmed by *Ingraham* v. *Wright*, 430 U. S. 651, 671, n. 40 (1977) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions"). Second, he expressed doubt whether a "spontaneous attack" by a prison guard, done without the authorization of prison officials, fell within the traditional Eighth Amendment definition of "punishments." 481 F. 2d, at 1032. Although Judge Friendly gave no reason for not analyzing the detainee's claim under the Fourth Amendment's prohibition against "unreasonable . . . seizures" of the person, his refusal to do so was apparently based on a belief that the protections of the Fourth Amendment did not extend to pretrial detainees. See *id.*, at 1033 (noting that "most of the courts faced with challenges to the conditions of *pretrial* detention have primarily based their analysis directly on the due process clause"). See n. 10, *infra.*

law enforcement officers deprives a suspect of liberty without due process of law." 481 F. 2d, at 1032. As support for this proposition, he relied upon our decision in *Rochin* v. *California*, 342 U. S. 165 (1952), which used the Due Process Clause to void a state criminal conviction based on evidence obtained by pumping the defendant's stomach. 481 F. 2d, at 1032–1033. If a police officer's use of force which "shocks the conscience" could justify setting aside a criminal conviction, Judge Friendly reasoned, a correctional officer's use of similarly excessive force must give rise to a due process violation actionable under § 1983. *Ibid.* Judge Friendly went on to set forth four factors to guide courts in determining "whether the constitutional line has been crossed" by a particular use of force—the same four factors relied upon by the courts below in this case. *Id.*, at 1033.

In the years following *Johnson* v. *Glick*, the vast majority of lower federal courts have applied its four-part "substantive due process" test indiscriminately to all excessive force claims lodged against law enforcement and prison officials under § 1983, without considering whether the particular application of force might implicate a more specific constitutional right governed by a different standard.[7] Indeed, many courts have seemed to assume, as did the courts below in this case, that there is a generic "right" to be free from excessive force, grounded not in any particular constitutional provision but rather in "basic principles of § 1983 jurisprudence."[8]

We reject this notion that all excessive force claims brought under § 1983 are governed by a single generic standard. As we have said many times, § 1983 "is not itself a

---

[7] See Freyermuth, Rethinking Excessive Force, 1987 Duke L. J. 692, 694–696, and nn. 16–23 (1987) (collecting cases).

[8] See *Justice* v. *Dennis*, *supra*, at 382 ("There are . . . certain basic principles in section 1983 jurisprudence as it relates to claims of excessive force that are beyond question [,] [w]hether the factual circumstances involve an arrestee, a pretrial detainee or a prisoner").

source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U. S. 137, 144, n. 3 (1979). In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. See *id.*, at 140 ("The first inquiry in any § 1983 suit" is "to isolate the precise constitutional violation with which [the defendant] is charged").[9] In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct. The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized "excessive force" standard. See *Tennessee v. Garner, supra*, at 7–22 (claim of excessive force to effect arrest analyzed under a Fourth Amendment standard); *Whitley v. Albers*, 475 U. S. 312, 318–326 (1986) (claim of excessive force to subdue convicted prisoner analyzed under an Eighth Amendment standard).

Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person. This much is clear from our decision in *Tennessee v. Garner, supra*. In *Garner*, we addressed a claim that the use of deadly force to apprehend a fleeing suspect who did not appear to be armed or otherwise dangerous violated the suspect's constitutional rights, notwithstanding the existence of probable cause to arrest.

---

[9] The same analysis applies to excessive force claims brought against federal law enforcement and correctional officials under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U. S. 388 (1971).

Though the complaint alleged violations of both the Fourth Amendment and the Due Process Clause, see 471 U. S., at 5, we analyzed the constitutionality of the challenged application of force solely by reference to the Fourth Amendment's prohibition against unreasonable seizures of the person, holding that the "reasonableness" of a particular seizure depends not only on *when* it is made, but also on *how* it is carried out. *Id.*, at 7–8. Today we make explicit what was implicit in *Garner*'s analysis, and hold that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.[10]

---

[10] A "seizure" triggering the Fourth Amendment's protections occurs only when government actors have, "by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen," *Terry* v. *Ohio*, 392 U. S. 1, 19, n. 16 (1968); see *Brower* v. *County of Inyo*, 489 U. S. 593, 596 (1989).

Our cases have not resolved the question whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins, and we do not attempt to answer that question today. It is clear, however, that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment. See *Bell* v. *Wolfish*, 441 U. S. 520, 535–539 (1979). After conviction, the Eighth Amendment "serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified." *Whitley* v. *Albers*, 475 U. S., at 327. Any protection that "substantive due process" affords convicted prisoners against excessive force is, we have held, at best redundant of that provided by the Eighth Amendment. *Ibid.*

Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "'the nature and quality of the intrusion on the individual's Fourth Amendment interests'" against the countervailing governmental interests at stake. *Id.*, at 8, quoting *United States* v. *Place,* 462 U. S. 696, 703 (1983). Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. See *Terry* v. *Ohio,* 392 U. S., at 22–27. Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell* v. *Wolfish,* 441 U. S. 520, 559 (1979), however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. See *Tennessee* v. *Garner,* 471 U. S., at 8–9 (the question is "whether the totality of the circumstances justifie[s] a particular sort of . . . seizure").

The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. See *Terry* v. *Ohio, supra,* at 20–22. The Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested, *Hill* v. *California,* 401 U. S. 797 (1971), nor by the mistaken execution of a valid search warrant on the wrong premises, *Maryland* v. *Garrison,* 480 U. S. 79 (1987). With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," *Johnson* v. *Glick,* 481 F. 2d, at 1033, violates the Fourth Amendment. The calculus of reasonableness must embody

allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. See *Scott* v. *United States*, 436 U. S. 128, 137–139 (1978); see also *Terry* v. *Ohio, supra,* at 21 (in analyzing the reasonableness of a particular search or seizure, "it is imperative that the facts be judged against an objective standard"). An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional. See *Scott* v. *United States, supra,* at 138, citing *United States* v. *Robinson,* 414 U. S. 218 (1973).

Because petitioner's excessive force claim is one arising under the Fourth Amendment, the Court of Appeals erred in analyzing it under the four-part *Johnson* v. *Glick* test. That test, which requires consideration of whether the individual officers acted in "good faith" or "maliciously and sadistically for the very purpose of causing harm," is incompatible with a proper Fourth Amendment analysis. We do not agree with the Court of Appeals' suggestion, see 827 F. 2d, at 948, that the "malicious and sadistic" inquiry is merely another way of describing conduct that is objectively unreasonable under the circumstances. Whatever the empirical correlations between "malicious and sadistic" behavior and objective unreasonableness may be, the fact remains that the "malicious and sadistic" factor puts in issue the subjective motivations of the individual officers, which our prior cases make clear has no bearing on whether a particular seizure is "unreasonable" under the Fourth Amendment. Nor do we agree with the

Court of Appeals' conclusion, see *id.*, at 948, n. 3, that because the subjective motivations of the individual officers are of central importance in deciding whether force used against a convicted prisoner violates the Eighth Amendment, see *Whitley* v. *Albers*, 475 U. S., at 320–321,[11] it cannot be reversible error to inquire into them in deciding whether force used against a suspect or arrestee violates the Fourth Amendment. Differing standards under the Fourth and Eighth Amendments are hardly surprising: the terms "cruel" and "punishments" clearly suggest some inquiry into subjective state of mind, whereas the term "unreasonable" does not. Moreover, the less protective Eighth Amendment standard applies "only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." *Ingraham* v. *Wright*, 430 U. S. 651, 671,

---

[11] In *Whitley*, we addressed a § 1983 claim brought by a convicted prisoner, who claimed that prison officials had violated his Eighth Amendment rights by shooting him in the knee during a prison riot. We began our Eighth Amendment analysis by reiterating the long-established maxim that an Eighth Amendment violation requires proof of the " ' "unnecessary and wanton infliction of pain." ' " 475 U. S., at 319, quoting *Ingraham* v. *Wright*, 430 U. S., at 670, in turn quoting *Estelle* v. *Gamble*, 429 U. S. 97, 103 (1976). We went on to say that when prison officials use physical force against an inmate "to restore order in the face of a prison disturbance, . . . the question whether the measure taken inflicted unnecessary and wanton pain . . . *ultimately turns* on 'whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' " 475 U. S., at 320–321 (emphasis added), quoting *Johnson* v. *Glick*, 481 F. 2d, at 1033. We also suggested that the other prongs of the *Johnson* v. *Glick* test might be useful in analyzing excessive force claims brought under the Eighth Amendment. 475 U. S., at 321. But we made clear that this was so *not* because Judge Friendly's four-part test is some talismanic formula generally applicable to all excessive force claims, but because its four factors help to focus the central inquiry in the Eighth Amendment context, which is whether the particular use of force amounts to the "unnecessary and wanton infliction of pain." See *id.*, at 320–321. Our endorsement of the *Johnson* v. *Glick* test in *Whitley* thus had no implications beyond the Eighth Amendment context.

n. 40 (1977). The Fourth Amendment inquiry is one of "objective reasonableness" under the circumstances, and subjective concepts like "malice" and "sadism" have no proper place in that inquiry.[12]

Because the Court of Appeals reviewed the District Court's ruling on the motion for directed verdict under an erroneous view of the governing substantive law, its judgment must be vacated and the case remanded to that court for reconsideration of that issue under the proper Fourth Amendment standard.

*It is so ordered.*

JUSTICE BLACKMUN, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, concurring in part and concurring in the judgment.

I join the Court's opinion insofar as it rules that the Fourth Amendment is the primary tool for analyzing claims of excessive force in the prearrest context, and I concur in the judgment remanding the case to the Court of Appeals for reconsideration of the evidence under a reasonableness standard. In light of respondents' concession, however, that the pleadings in this case properly may be construed as raising a Fourth Amendment claim, see Brief for Respondents 3, I see no reason for the Court to find it necessary further to reach out to decide that prearrest excessive force claims are to be analyzed under the Fourth Amendment *rather than* under a

---

[12] Of course, in assessing the credibility of an officer's account of the circumstances that prompted the use of force, a factfinder may consider, along with other factors, evidence that the officer may have harbored ill-will toward the citizen. See *Scott* v. *United States*, 436 U. S. 128, 139, n. 13 (1978). Similarly, the officer's *objective* "good faith"—that is, whether he could reasonably have believed that the force used did not violate the Fourth Amendment—may be relevant to the availability of the qualified immunity defense to monetary liability under § 1983. See *Anderson* v. *Creighton*, 483 U. S. 635 (1987). Since no claim of qualified immunity has been raised in this case, however, we express no view on its proper application in excessive force cases that arise under the Fourth Amendment.

substantive due process standard. I also see no basis for the Court's suggestion, *ante*, at 395, that our decision in *Tennessee* v. *Garner*, 471 U. S. 1 (1985), implicitly so held. Nowhere in *Garner* is a substantive due process standard for evaluating the use of excessive force in a particular case discussed; there is no suggestion that such a standard was offered as an alternative and rejected.

In this case, petitioner apparently decided that it was in his best interest to disavow the continued applicability of substantive due process analysis as an alternative basis for recovery in prearrest excessive force cases. See Brief for Petitioner 20. His choice was certainly wise as a matter of litigation strategy in his own case, but does not (indeed, cannot be expected to) serve other potential plaintiffs equally well. It is for that reason that the Court would have done better to leave that question for another day. I expect that the use of force that is not demonstrably unreasonable under the Fourth Amendment only rarely will raise substantive due process concerns. But until I am faced with a case in which that question is squarely raised, and its merits are subjected to adversary presentation, I do not join in foreclosing the use of substantive due process analysis in prearrest cases.