941 F.2d 1207
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Paul SPRATLIN, Plaintiff-Appellant,
v.
MONTGOMERY COUNTY, MARYLAND, Barbara Kunkle, Robert
Angelino, Defendants-Appellees,
and
Robert Garrison, John & Jane Doe, State of Maryland, Defendants.
 No. 90-2465.
 United States Court of Appeals, Fourth Circuit.
 Argued May 8, 1991.
Decided Aug. 19, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Alexander Harvey, II, Senior District Judge. (CA-89-806-H)
 Thomas James Gagliardo, Silver Spring, Md., for appellant.
 Patricia P. Hines, Associate County Attorney, Rockville, Md. (Argued), for appellees; Joyce R. Stern, County Attorney, Linda D. Berk, Senior Assistant County Attorney, Rockville, Md., on brief.
 D.Md.
 AFFIRMED.
 Before PHILLIPS and WILKINS, Circuit Judges, and ELIZABETH V. HALLANAN, United States District Judge for the Southern District of West Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Paul Spratlin filed this action under 42 U.S.C. § 1983 claiming his constitutional rights were violated as a result of his arrest and detention for an emergency psychiatric evaluation pursuant to §§ 10-620 et seq. of the Health-General Article of the Annotated Code of Maryland. The district court granted the Defendants-Appellees' motion for summary judgment. We affirm.
 
 I. Summary of the Case
 
 2
 Spratlin attended a rally at the Executive Office Building in Rockville, Maryland[1] on March 21, 1988 to protest county enforcement of a zoning ordinance. One of the speakers at the organized rally began to chant "Where's Sid" in reference to County Executive Sidney Kramer. In response, Spratlin yelled "Sidney must die!" several times as well as "Death to Sid Kramer!" That day Montgomery County police officers went undercover to monitor the rally. Posing as a photographer and reporter, Robert Angelino and Barbara Kunkle approached Spratlin to question him about his statements. When asked why he felt that the County Executive should die, Spratlin responded, "Death would be an appropriate means to end a situation such as this." When questioned further about his statement that "Sidney must die," Spratlin responded, "Sid should do the proper thing and commit suicide." He further added that "the time is right in this country for a revolution." Besides these remarks to the undercover officers, Spratlin indicated that he previously attended a demonstration at the residence of County Executive Kramer and knew where Kramer lived. At the time of the rally, the County Executive was out of town. Spratlin knew this fact when conversing with the undercover officers, however, the officers did not.
 
 
 3
 Following the rally the officers conducted a background investigation of Spratlin. Their investigation revealed that the Appellant was arrested in 1985 for disruptive behavior in a District of Columbia public library. In addition, the officers learned that Takoma Park, Maryland police removed Spratlin from the Washington Adventist Hospital in 1987 for disruptive behavior and acting combative toward a hospital security officer. On the latter occasion Spratlin went to the hospital on his own seeking mental health treatment. Furthermore, the officers discovered that doctors at the Washington Adventist Hospital and Springfield State Hospital evaluated the Appellant in 1987. Doctors at Washington Adventist preliminarily diagnosed Spratlin as suffering from paranoid schizophrenia, depression, and suicidal thoughts. More thorough psychiatric evaluation by doctors at Springfield State lead to the medical conclusion that Spratlin was neither homicidal nor suicidal though he bordered on "magical thinking" and had admitted to an earlier marijuana abuse problem.
 
 
 4
 Following their investigation Angelino and Kunkle met with other members of the County police including the Chief of Police for Montgomery County, Donald E. Brooks. Chief Brooks then determined that the County police would petition the District Court of Montgomery County for an emergency psychiatric evaluation of Spratlin pursuant to §§ 10-620 et seq. of the Health-General Article of The Annotated Code of Maryland. Kunkle prepared and signed a petition for evaluation on March 23, 1988. The petition was presented to and approved by District Judge Paul McGuckian. In granting the petition, Judge McGuckian found that there was probable cause to believe that Spratlin, as an "emergency evaluee" under §§ 10-620, et seq. had shown symptoms of a mental disorder and that there appeared to be "clear and imminent danger" of him doing bodily harm to another. The District Court of Montgomery County ordered that Spratlin be taken into custody and transported to the emergency room of the nearest hospital for examination and treatment, if necessary. The order required that Spratlin undergo examination within six hours after arrival and that his detention not exceed thirty hours.
 
 
 5
 Pursuant to the order, other County police officers served the petition and order on Spratlin and arrested him on March 23.[2] The officers handcuffed the emergency evaluee and transported him to Washington Adventist where he was detained for no more than three hours. Doctors examined Spratlin and determined that he did not possess homicidal or suicidal tendencies and that he was not a danger to others. The hospital released him with the admonition that he seek further counseling and refrain from attending political rallies.
 
 II. Discussion
 
 6
 The district court granted Defendants-Appellees' motion for summary judgment in holding that Officers Angelino and Kunkle acted reasonably under the circumstances, citing Graham v. Connor, 490 U.S. 386 (1989), and that Montgomery County cannot be found liable as a municipality under § 1983 inasmuch as there was no municipal custom that commanded the officers to violate the constitutional rights of Spratlin. Because we find that the officers are entitled to qualified immunity, we affirm.
 
 
 7
 It is axiomatic that the protection of qualified immunity extends to police officers. Pierson v. Ray, 386 U.S. 547 (1967); Tarantino v. Baker, 825 F.2d 772 (4th Cir.1987). Government officials performing discretionary functions, such as police officers, are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800 (1982). Whether a defendant knew or should have known that the right at issue was "clearly established" turns on objective reasonableness. Harlow, 457 U.S. at 819. The contours of the clearly established right allegedly violated must be sufficiently clear that a reasonable official, in this case a police officer, would understand that what was done violates that right. In other words, the unlawfulness must be apparent in light of pre-existing law. Anderson v. Creighton, 483 U.S. 635, 640 (1987).
 
 
 8
 We believe that a reasonable police officer would not find apparent unlawfulness in the actions of Officers Angelino and Kunkle as violative of Spratlin's First and Fourth Amendment rights. Upon hearing the threatening exclamations of Spratlin at the rally, the officers elected to inquire of him to learn his motive for making such statements. Spratlin's exclamations prompted the officers to conduct a background check which revealed prior incidents of disruptive behavior. Such an investigation was made in an attempt to better understand the Appellant and determine whether he posed any danger to others including County Executive Kramer. The officers presented the information gathered concerning Spratlin to higher ranking members of the County police including Chief Brooks who determined that a petition for an emergency psychiatric evaluation would be appropriate. In interviewing Spratlin at the rally and later examining records, the officers performed a routine investigative function. Overall, we do not find apparent unlawfulness in these actions of the officers. Moreover, we are convinced that a reasonable police officer would arrive at the same conclusion.
 
 III. Conclusion
 
 9
 Accordingly, qualified immunity applies to Officers Angelino and Kunkle and protects them from civil liability under 42 U.S.C. § 1983. In view of our holding, we need not address the issue of the liability of Montgomery County.
 
 
 10
 AFFIRMED.
 
 
 
 [1]
 The City of Rockville is the county seat of Montgomery County, Maryland
 
 
 [2]
 On this day, County Executive Kramer returned to Rockville