

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-7-2002

# Pikel v. Garrett

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-3850

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Pikel v. Garrett" (2002). *2002 Decisions*. Paper 711.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/711

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No:  01-3850
_____

LYNN PIKEL; SAMUEL CRONAN;
WILLIAM DALTON; LARRY WANNETT;
WILLIAM POSA; WAYNE LING

v.

BARBARA GARRETT; LAWRENCE FUKSA;
PATRICK MCCARTHY; WILLIAM PURIFOY;
R. E. SHAFFER; DANIEL OPSATNIK;
ROBERT E. FYOCK; DETECTIVE ALMES;
JOHN DOE NO. 1, DEPUTY SHERIFF
OF INDIANA COUNTY; JOHN DOE NO. 2;
a Federal Agent; JAMES E. LIPTAK;
JODI A. LUCIC; BECKWITH, Sheriff
of Indiana County; INDIANA;
UNITED STATES OF AMERICA


Barbara Garrett, Lawrence Fuksa,
William Purifoy, Jodi A. Lucic,
Appellants

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 98-cv-01521)
District Judge: Honorable Robert J. Cindrich

_____

Argued on August 1, 2002

Before: ROTH, RENDELL
and AMBRO Circuit Judges

(Opinion filed: November 7, 2002)

Timothy P. O'Brien, Esquire (Argued)
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219

**Attorney for Appellees**

D. Michael Fisher
Attorney General

Rodney M. Torbic (Argued)
Senior Deputy Attorney General

Calvin Koons
Senior Deputy Attorney General
Appellate Litigation Section

John G. Knorr, Jr.
Chief Deputy Attorney General
Chief, Appellate Litigation Section

Office of the Attorney General
6th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA 15219

**Attorneys for Appellants**

**ROTH**, <u>Circuit Judge</u>:

On September 13, 1996, certain Pennsylvania law enforcement agents searched the premises of Pikel Universal Auto Repair, pursuant to a warrant for contraband and in furtherance of a drug investigation. During the search, the agents detained various employees of Pikel, who were on the premises but were not implicated in the drug investigation, and left them handcuffed for approximately three and one half hours. One of the employees, Samuel Cronan, sustained physical injuries when two of the agents pushed him to the ground and pointed a gun at his ear after he failed to respond to an order to "get down."[1]

Objecting to their initial seizure, their prolonged detention and the agents' alleged use of excessive force, six of the employees brought a Section 1983 action against the agents in the United States District Court for the Western District of Pennsylvania. On September 11, 2001, the District Court granted summary judgment in favor of some of the agents, based on qualified immunity, but denied summary judgment on the basis of qualified immunity to defendants Barbara Garrett, Lawrence Fuksa, William Purifoy, and Jodi A. Lucic on the employees' claims arising out of the length of their detention and the alleged use of excessive

---

[1]The parties dispute the duration of the Employees' detention and the extent and cause of Cronan's injuries. However, for purposes of reviewing the Agents' motion for summary judgment, we view these issues of fact in a light most favorable to the Employees - the non-moving parties. See <u>Curley v. Klem</u>, 2002 U.S. App. LEXIS 15488, *28 (3d Cir. 2002).

force. These four agents appealed. Because we conclude that the appellants are entitled to qualified immunity from these claims, we will reverse.

A. Jurisdiction and Standard of Review

The District Court had subject matter jurisdiction over the employees' § 1983 action pursuant to 28 U.S.C. §§ 1331 and 1343. Ordinarily, denials of summary judgment are not appealable because they are not considered "final" for purposes of 28 U.S.C. § 1291. However, we have appellate jurisdiction to review the District Court's denial of summary judgment under the "collateral order doctrine" since the appellants' entitlement to qualified immunity is at issue. Torres v. United States, 200 F.3d 179, 184 (3d Cir. 1999). We exercise plenary review over an order denying a claim of qualified immunity. See id.

B. Discussion

Government officials performing discretionary functions are entitled to qualified immunity if "a reasonable officer could have believed that [the] conduct was lawful, in light of the clearly established law and the information in the officer's possession." Sharrar v. Felsing, 128 F.3d 810, 826 (3d Cir. 1997). Thus, the appellants are entitled to qualified immunity even if they "reasonably but mistakenly" concluded that their conduct was lawful given the clearly established law in 1996 - when the search occurred. Id.

In making its ruling in this case, the District Court did not consider whether in 1996 the circumstances of the prolonged detention and the excessive use of force violated "clearly established law." It should have done so. See Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 2160 (2001). As we explain below, we conclude that the law was not clearly established in

1996 that the detention of the employees and the force used to carry out the search were unlawful. Accordingly, we hold that the appellants are entitled to qualified immunity and that the District Court should have granted the motion for summary judgment in its entirety.

1.     The Detention of the Employees

In Michigan v. Summers, 452 U.S. 692, 705 (1981), the Supreme Court held that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." The Summers Court reasoned that allowing police officers to "routinely exercise unquestioned command of the situation" by detaining occupants would minimize many of the risks attendant to drug searches including suspect flight, destruction of evidence and harm to officers. Id. at 702-03. Ultimately, the reasonableness of such a detention depends on a balance of the law enforcement interests served against the level of intrusiveness imposed. See Leveto v. Lapina, 258 F.3d 156, 167 (3d Cir. 2001).

The detention of the employees was, in some ways, more intrusive than the detention considered in Summers. For example, the detention of the employees took place in the public workplace rather than a private residence. It, therefore, implicated the "public stigma" and "indignity" associated with police detention to a greater degree. 452 U.S. at 702. Moreover, the detention at issue here was relatively long and intrusive insofar as the employees were left handcuffed for nearly three and one half hours.

However, the detention also served many valid law enforcement interests. As Summers suggested, drug investigations are, by their nature, "the kind of transaction[s] that

5

may give rise to sudden violence or frantic efforts to conceal or destroy evidence." 452 U.S. at 702. The instant investigation was no exception. During the detention, the agents learned that many of the employees had criminal records - including violent offenses. Moreover, the record suggests that tools and machinery about the auto repair facility could have been used as weapons. One of the employees, in fact, was carrying a gun when she initially was detained. Given these facts, it certainly was reasonable to assume that detention might reduce the risk of harm to the agents and to the public. Furthermore, the agents used the detention as an opportunity to identify and question the employees to determine what they knew about the drug trafficking that took place at Pikel.

Although Summers dealt with a residential search, we have considered the Summers rule in the context of workplace searches. In both Leveto v. Lapina, 258 F.3d 156 (3d Cir. 2001) and Watkins v. Fisher, 281 F.3d 226, 2001 U.S. App. LEXIS 27973 (3d Cir. 2001), we held that agents detaining employee-occupants of premises being searched were entitled to qualified immunity from § 1983 suits. In both cases, we determined that reasonable officers would not consider this extension of Summers to violate clearly established law at the time of the searches - 1996 and 1999, respectively.

With respect to the duration of detention, we have recognized that the breadth of the Summers rule was "highly uncertain" in 1996. See 258 F.3d at 173. While Summers, itself, intimated that "[s]pecial circumstances, or possibly a prolonged detention, might lead to a different conclusion in an unusual case," few cases since have delineated how long is "too long." Summers, 452 U.S. at 705 n.21 (emphasis added). See also Baker v. Monroe

6

Township, 50 F.3d 1186, 1192 (3d Cir. 1995) ("[T]here is no per se rule about the length of time a suspect may be detained before the detention becomes a full-scale arrest. Instead, the court must examine the reasonableness of the detention, particularly whether the police were diligent in accomplishing the purpose of the stop as rapidly as possible."). One such case - Leveto - held that it was unreasonable for IRS agents to detain the occupant of a veterinarian's office for eight hours during a search. See 258 F.3d at 170-72. However, even the Leveto court concluded that the IRS agents were nonetheless entitled to qualified immunity since the eight hour detention was not clearly unlawful when the search took place. See id. at 172-73.

Given this precedent and the relative uncertainty in the law interpreting Summers when the Pikel search occurred in 1996, we conclude that, although employees may not be unreasonably detained during a search, the appellants were reasonable in their belief that the length of the detention here was not unreasonable. As such, the appellants are entitled to qualified immunity from the employees' claims arising out of their detention.

### 2. Excessive Force

The District Court denied the appellants summary judgment on the excessive force claims because it found genuine issues of material fact as to whether they were reasonable in their use of drawn guns, handcuffs, and - in Cronan's case - pushing. However, we hold that the appellants were reasonable in concluding that none of these actions violated "clearly established" law. Accordingly, we will reverse the District Court on the ground that the appellants are entitled to qualified immunity from these claims, as well.

In Baker, we reviewed a grant of summary judgment to a township and township police

7

officer named in a § 1983 action similar to the employees' action here. See 50 F.3d at 1189-90. The Bakers were social guests at a residence that police planned to search for drugs and related contraband pursuant to a "no-knock" warrant. Unfortunately for the Bakers, they approached the residence at the same time that law enforcement agents began executing their warrant. The police came upon the Bakers with guns drawn, ordered them to "get down," forced them to the ground and temporarily handcuffed them.

The Baker court reversed the grant of summary judgment with respect to one particular police officer, reasoning that issues of material fact existed about whether or not he acquiesced to the use of excessive force during the search. In doing so, however, the court also discussed whether law enforcement's use of drawn guns and handcuffs or pushing occupants to the ground during the course of a drug raid constituted "excessive force." Id. at 1191-95.

The Baker court explained that there was no per se rule regarding when the use of drawn guns and handcuffs prior to a formal arrest would constitute excessive force. See id. at 1193. Rather, the use of guns and handcuffs "must be justified by the circumstances." Id. (emphasis added). Similarly, the court considered the circumstances of the search to conclude that ordering the Bakers to "get down" and forcibly pushing them to the ground was constitutionally justified under Summers and Terry v. Ohio, 392 U.S. 1 (1968). Id. at 1192 (considering particularly the dangers inherent in drug raids, the need to identify occupants, the need for the "element of surprise," the need to protect occupants from harm and the need to clear the way for law enforcement's approach).

8

Additionally, the Supreme Court has instructed us to consider the stressful nature of interactions between suspects and the police in balancing circumstances to determine if the use of force is reasonable. "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' . . . violates the Fourth Amendment. [Rather, t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." Graham v. Conner, 490 U.S. 386, 396-97 (1989) (citation omitted).

As a practical matter, the agents' search of Pikel involved many of the same circumstances and implicated many of the same interests as the search at issue in Baker. The agents - like the police officers in Baker - had to identify the occupants and secure the premises for their own safety and the safety of the occupants. Moreover, both cases involved drug raids which are not only inherently stressful but also inherently risky. See 50 F.3d at 1191 ("The dangerousness of chaos is quite pronounced in a drug raid, where the occupants are likely to be armed, where the police are certainly armed, and the nature of the suspected drug operation would involve a great deal of coming and going by drug customers."). If anything, Cronan's noncompliance with the order to "get down" makes the use of force more justifiable in the instant case than in Baker.

Although police officers' use of drawn guns, handcuffs, and pushing could violate "clearly established" law, the constitutionality of using such force was - under the law established in 1996 - highly dependant upon a balance of circumstances. At the very least, the

9

circumstances of the Pikel search make the reasonableness of the appellants' force a "close call." Accordingly, the appellants have qualified immunity from the excessive force claims.

C.    Conclusion

For the foregoing reasons, we will reverse that portion of the September 11, 2001, Order denying the appellants' motion for summary judgment and remand this case to the District Court for the entry of summary judgment in their favor.

_____

TO THE CLERK:

    Please file the foregoing Opinion.

BY THE COURT:

/s/ Jane R. Roth
Circuit Judge
