[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 23, 2005
THOMAS K. KAHN
CLERK

----------------------------------------
No. 04-12816
Non-Argument Calendar
----------------------------------------

D. C. Docket No. 03-00223-CV-ORL-18JGG

JEFFREY DAVIS,

Plaintiff-Appellant,

versus

BIM LOWERS,
PATRICK GILLICK, Deputy Sheriffs, Orange County Sheriff's Office, in their
individual and official capacities.

Defendants-Appellees.

----------------------------------------------------------------
Appeal from the United States District Court
for the Middle District of Florida
----------------------------------------------------------------

(May 23, 2005)

Before EDMONDSON, Chief Judge, TJOFLAT and DUBINA, Circuit Judges.

PER CURIAM:

Jeffrey Davis, a Florida prisoner proceeding pro se, appeals the district court's grant of summary judgment in favor of Orange County Deputy Sheriffs Bim Lowers and Patrick Gillick ("Defendants"), in this 42 U.S.C. § 1983 action alleging Defendants used excessive force during Davis's arrest. No reversible error has been shown; we affirm.

The facts in the light most favorable to Davis show that, while patrolling on the evening of 7 June 2000, Defendants stopped at a gas station to talk to William Siders, a person they were looking for in connection with a sexual battery investigation. Siders was near a car containing several passengers, including Davis. After one of the passengers briefly opened a door, Gillick stated he smelled the odor of cannabis coming from the car. According to Davis, the car he was riding in began to pull out of the gas station; but Gillick motioned them back.

Davis claimed he then began placing his shoes on. But Gillick thought he saw Davis "making furtive movements inside of the car . . . putting his hands between his legs as if shoving something beneath him and reaching towards his feet on the floorboard of the vehicle." And Lowers stated that he observed Davis

2

stuffing several small baggies of cannabis behind the back seat head rest of the car.

According to Davis, Gillick then approached the car and asked the driver for her license. At that moment, Davis asserted that he tried to get out of the car "to ask what the problem was." When he placed his left leg out of the car door, Gillick slammed the car door on his leg. Despite Davis yelling, "My leg, my leg," Gillick slammed the car door on Davis's leg four or five times, with Lowers assisting one time. Davis attempted to push the car door open while Gillick held the door on his leg. Defendants then allegedly pulled Davis from the car, "slammed [him] face down on the pavement," and handcuffed him. Davis claimed that he was handcuffed so tightly (1) that the teeth of the handcuff "caught between the skin on [his] right wrist and the inside of the handcuff" and (2) he "lost feeling in [his] hands" after five minutes.

Defendants stated that Davis got to his feet and began to run away after the deputies turned their attention to other suspects. Davis admitted that he "did run" after he was handcuffed because he wanted to step on money that had fallen from his pocket to keep it from blowing away. Defendants chased Davis and secured him in the back of the patrol car. An emergency medical technician (EMT) arrived and examined a bump and cut over Davis's eye, but Davis claimed that the EMT

3

refused to look at his leg. Cocaine and cannabis were found in the car in which Davis was a passenger.[1]

While Davis was in the patrol car, he complained to Lowers that the handcuffs were too tight. Lowers told him "to[o] bad," even after allegedly seeing that Davis's wrists were bleeding. Davis claimed that Defendants left him handcuffed in this manner for over six hours: nearly five hours in the patrol car and over an hour more at the police station. Davis indicated that, when he arrived at the jail, he was treated for injuries to his head, leg, and wrists, but was informed by medical staff that "there was nothing more they could do for [his] injuries but give them time to heal." Davis claims that now he has permanent scars on his leg and wrists.

Davis argues that genuine issues of material fact exist about the circumstances of his arrest, requiring a credibility determination by a jury and precluding summary judgment. He claims that Defendants used needless and excessive force during and after his arrest, and that the district court thus should not have determined that Defendants were entitled to qualified immunity.

---

[1] Davis later was found guilty by a jury of cocaine possession, resisting an officer without violence, and escape during transport.

We review the district court's rulings on a motion for summary judgment <u>de novo</u>; we view all evidence and factual inferences therefrom in the light most favorable to the non-moving party. <u>Miller v. King</u>, 384 F.3d 1248, 1258-59 (11th Cir. 2004). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).[2]

Qualified immunity protects from liability government officials sued in their individual capacities if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting <u>Harlow v. Fitzgerald</u>, 102 S.Ct. 2727, 2738 (1982)).[3] "An officer will be entitled to qualified immunity if his actions were objectively reasonable, that is if an objectively

---

[2] Davis attaches to his appellate brief several affidavits from other occupants of the car. He did not present these documents to the district court: they are outside the record on appeal and we do not consider them. <u>See</u> Fed.R.App.P 10(a) (record on appeal consists of, among other things, "the original papers and exhibits <u>filed in the district court</u>") (emphasis added).

[3] Davis voluntarily withdrew his claims against Defendants in their official capacity. And on appeal he mentions neither these claims, nor his state law claims: they are abandoned. <u>See</u> <u>Irwin v. Hawk</u>, 40 F.3d 347, 347 n.1 (11th Cir. 1994) (stating that a <u>pro se</u> litigant abandons an issue by failing to challenge it on appeal).

reasonable officer in the same situation could have believed that the force used was not excessive." Vinyard, 311 F.3d at 1346.

To receive qualified immunity, the officer first must "prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Id. (citation omitted). Here, no one disputes that Defendants were acting within the scope of their discretionary authority by arresting Davis and transporting him to the jail. The burden then shifts to Davis to show that qualified immunity is not appropriate. The threshold inquiry is whether Davis's allegations, if true, establish a constitutional violation. Id. We conclude that Davis has not shown a constitutional violation.[4]

The use of excessive force in carrying out an arrest constitutes a violation of the Fourth Amendment. Graham v. Connor, 109 S.Ct. 1865, 1870-71 (1989). But "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. at 1871-72. And in this Circuit, "we recognize that the typical arrest involves some force and injury." Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir. 2002), cert. denied, 123 S.Ct. 1482 (2003).

---

[4] We need not proceed to the second question: if a constitutional right would have been violated under Davis's version of the facts, we next ask whether that right was "clearly established." Vinyard, 311 F.3d at 1346.

6

The force used by Defendants during their arrest of Davis did not violate the Constitution. Viewing the evidence in the light most favorable to Davis, he suffered injuries: to his left leg, from Defendants slamming the car door against it several times, to his face, from Defendants forcing him to the pavement to handcuff him, and to his wrists, from tight and biting handcuffs. But whether an officer's acts are reasonable under the Fourth Amendment involves a careful evaluation of the circumstances of each particular case: specifically, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 109 S.Ct. at 1872.

All of these factors weigh heavily in favor of Defendants' acts. The severity of the crime at issue -- possession of various narcotics -- was high. Gillick smelled the aroma of burned cannabis; Lowers thought he saw Davis trying to conceal baggies of cannabis. And narcotics later were found in the car.

Second, it was reasonable for Defendants to think that Davis posed an immediate threat. Although Davis claims he only was putting on his shoes when Defendants approached the car, Gillick thought Davis was making furtive movements toward his feet, which Gillick interpreted as Davis possibly reaching for or concealing a weapon. Davis also asserts that he only was trying to get out

7

of the car to "ask what the problem was." But a reasonable officer forced to make a "split-second judgment" might attempt to force Davis back into the car, containing multiple occupants and suspected of containing narcotics, until the situation was in hand. Graham, 109 S.Ct. at 1872.[5]

Third, Davis made movements suggesting to a reasonable officer that he was resisting arrest or trying to flee. He attempted to open the car door while Defendants were investigating the car. And Davis admits that he started to run to attempt to catch some money that had fallen from his pockets. A reasonable officer could perceive this act as an attempt to escape and would keep Davis restrained securely afterwards. In sum, Defendants' acts were "'objectively reasonable' in [the] light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 109 S.Ct. at 1872.

And we note that the injuries Davis suffered do not support a claim that Defendants' acts constituted unreasonably excessive force.[6] The EMT records

---

[5] The jury verdict on the count of resisting an officer without violence indicates that Davis tried to get out of the car when instructed to remain in it.

[6] Davis alleges that Defendants violated his due process rights by destroying or preventing him access to certain medical records from the date of his arrest that Davis asserts would have supported his claims. Davis sought to compel discovery of certain documents he felt were missing. And in one of his affidavits Davis asserted that Defendants' counsel had refused to provide medical records to him. But Davis did not raise properly to the district court the issue he presents now: that Defendants or their counsel intentionally and in bad faith withheld production of medical records. We decline to address this argument. See Krys v. Lufthansa German Airlines, 119 F.3d 1515, 1525

8

show that Davis's only injury was an abrasion over his left eye.  Davis suffered, at worst, some scarring from Defendants' acts: he admits that jail medical staff told him "there was nothing more they could do for [his] injuries but give them time to heal."  See Rodriguez, 280 F.3d at 1352 ("Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal").  Under the circumstances of this case, Defendants' acts do not rise to the level of a constitutional violation.

**AFFIRMED.**

---

n.19 (11th Cir. 1997) (refusing to address issue not fairly raised in a timely fashion in the district court).