POLLAK, District Judge,
concurring in part and dissenting in part.
Except as to one issue, I-find the court’s opinion in this difficult ease masterly: comprehensive, cogent, correct. The one issue on which I part company with the court is that canvassed in part II.B of the court’s opinion. The court there sustains the district court’s grant of summary judgment dismissing plaintiffs’ claims that the police used excessive force in arresting them. Stating that it is “reluctant to establish a precedent that would subject every police arrest of a group of possible violent offenders to compliance with the Marquis of Queensberry Rules of fair play,” the court, while acknowledging that “these police officers came close to the line,” concludes that “these circumstances, in totality, do not rise to a Fourth Amendment violation.” With great respect, I disagree. I believe that a fact-finder could, on the evidence before ther district court, reasonably conclude that the police officers crossed the line. I think it error for this court to hold that arrest methods which the court characterizes as “more akin to ... Rambo-type behavior ... than the police conduct expected in a quiet, family seaside town,” merit, as a matter of law, a constitutional seal of approval. In my judgment, the district court should have permitted the question whether excessive force was used to go to the jury.
I will not undertake to set forth at length the factual record which underlies my assessment, since the court’s opinion fairly states the essential facts. I will, however, set the general scene and highlight certain details which seem particularly relevant to the excessive-force issue. On October 1, 1992, the Sea Isle Police Department deployed all of its on-duty officers, and brought in reinforcements from neighboring towns as well ás from its own off-duty roster, to arrest four men who were inside a building and suspected of an assault involving a pistol. At the time of the arrests, various officers stationed outside the building carried, aside from their standard sidearms, .30 caliber rifles, submachine guns, and shotguns. One member of the SWAT team was posted as a sniper. Although no witness recounted the exact number of officers on the scene, a conservative figure can be assembled from the record of some twenty officers on the scene. This means that at the point of arrest, which was effectuated by SWAT team members wearing body armor, the police outnumbered the suspects by a ratio of at least five to one. When the four plaintiffs, pursuant to police directive, emerged from the building, they were made to lie down in the dirt and menaced with loaded revolvers by officers who, allegedly, were threatening to “blow your ... fucking heads off.”
' I believe that, at the very least, the plaintiffs have raised a genuine issue of material fact concerning whether it was “objectively reasonable,” under the standards the Supreme Court articulated in Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 1871-72, 104 L.Ed.2d 443 (1989), for the officers to use the force they did in arresting the plaintiffs. Graham’s fact-sensitive inquiry “requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.” Id. In light of the record before the court, a jury could reasonably find that the force the officers employed in making this arrest was excessive.
The record, viewed, as it must be, most favorably toward the plaintiffs, indicates that *833 four suspects — the very number the police expected to find — filed out of the building as directed by the officers. The police radio transcript cited in part II.C.l of the opinion indicates that the officers were apprised, before all the suspects had come out of the building, that the gun allegedly involved was not on the person of any of the arrestees.[2] On this account, plaintiffs have certainly raised a triable issue of whether it was objectively reasonable under these circumstances to hold a loaded weapon to the head of a suspect and employ death threats punctuated by obscenity while the apparently unarmed and cooperative suspects were held to the ground and handcuffed. Considering the formidable array of officers and firepower stationed outside, and given that plaintiffs apparently did not resist arrest, it would be reasonable for a jury to conclude that the force deployed was excessive. Therefore, summary judgment in favor of the defendants was not appropriate. See. Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir.1995)(reversing grant of summary judgment on excessive-force claim because jury could have found police behavior unreasonable).

. The police radio transcript quotes Mr. Devlin as stating "there's only one gun involved, it’s a pistol in the brown van in front of the house.” The Devlin statement tends to undercut the court’s statement in part II.B that the gun "was still unaccounted for." To the extent that the degree of force deployed by the police in making the arrests may be said to have depended on alleged uncertainty as to the whereabouts of the gun, there would appear to be dispute about a material fact.