**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JEAN S. STOUT, Administratrix of the
Estate of Edwin L. Plunkett,
deceased,
<u>Plaintiff-Appellant,</u>

v.

No. 99-1526

G. F. BINGEMAN; T. D. KANODE,
individually and in their official
capacities as officers of the
Roanoke City Police Department;
THE CITY OF ROANOKE, VIRGINIA,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, District Judge.
(CA-97-6-7)

Argued: January 27, 2000

Decided: April 4, 2000

Before NIEMEYER, Circuit Judge,
HAMILTON, Senior Circuit Judge, and
Frederic N. SMALKIN, United States District Judge for the
District of Maryland, sitting by designation.

_____

Affirmed by unpublished opinion. Judge Niemeyer wrote the opinion,
in which Senior Judge Hamilton and Judge Smalkin joined.

_____

**COUNSEL**

**ARGUED:** Thomas Dene, DENE & DENE, P.C., Abingdon, Virginia, for Appellant. Jim Harold Guynn, Jr., GUYNN & DILLON, P.C., Roanoke, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

NIEMEYER, Circuit Judge:

After Edwin Plunkett was fatally shot by officers of the Roanoke, Virginia police force, Jean Stout, the administratrix of Plunkett's estate, filed this action under 42 U.S.C. § 1983 against the police officers and the City of Roanoke, alleging excessive force in violation of the Fourth and Fourteenth Amendments. The district court granted the defendants' motion for summary judgment, holding that the officers' actions were objectively reasonable under the circumstances and that Stout had therefore failed to establish any violation of a constitutional right. Alternatively, the court held that the officers were entitled to qualified immunity. On Stout's appeal, we affirm.

I

On March 24, 1996, a dispatcher for the Roanoke City Police received a call from Billie Patton, who reported a domestic disturbance at the home she shared with Edwin Plunkett. The dispatcher alerted Officers Troy Kanode and Gerald Bingeman to the situation, and advised them that Plunkett had reportedly gone "downstairs to get a gun." Officer Kanode was the first to arrive on the scene, encountering Patton in front of her next-door neighbor's home. She told Officer Kanode that Plunkett was violently drunk and had physically abused her. Officer Kanode observed that Patton had red marks on her legs, arms, and neck.

2

While Officer Kanode was conversing with Patton, Officer Bingeman arrived. Officer Kanode briefed Officer Bingeman on the circumstances and expressed his intent to arrest Plunkett for assaulting Patton. Officer Kanode also told Officer Bingeman that he had previously been involved in an arrest of Plunkett in which it had been necessary to use force to subdue him.

As Officers Kanode and Bingeman approached Plunkett's house, Plunkett appeared at his front door, partially opened the screen door and began yelling, demanding that the officers leave his property. Officer Bingeman took hold of the screen door, opening it fully, and Officer Kanode explained to Plunkett that they "just wanted to get his side of the story," but Plunkett continued to be uncooperative. At that point, Officer Kanode advised Plunkett that he was under arrest and demanded that Plunkett, who was partially concealed behind the door-jamb, put his hands where the officers could see them. According to the officers, Plunkett then took a step backwards, revealing that he was holding a high-powered hunting rifle in his left hand. Plunkett continued to retreat from the doorway, raising the rifle so that it was leveled at the officers and bringing his right hand toward the trigger. The officers drew their weapons, and Officer Bingeman yelled for Plunkett to drop his rifle. Plunkett refused to comply and Officer Bingeman, fearing he was about to be shot, fired the first shot. Hearing the shot, and uncertain who had fired, Officer Kanode also began firing at Plunkett. The officers continued firing until Plunkett fell to the floor.

Paramedics declared Plunkett dead at the scene. The autopsy indicated that Plunkett had been struck by either six or seven bullets, at least five of which appeared to have entered from the rear, including the fatal shot to the back of the head.

Jean Stout, the administratrix of Plunkett's estate, brought suit under 42 U.S.C. § 1983 against Officers Kanode and Bingeman, as well as the City of Roanoke, alleging that Kanode and Bingeman had used excessive force in violation of the Fourth and Fourteenth Amendments. On the defendants' motion for summary judgment, the district court ruled that the force that the officers used was objectively reasonable in the circumstances and that Stout had therefore failed to establish any violation of a constitutional right. Alternatively, the

3

court found that the officers were entitled to qualified immunity. This appeal followed.

II

In the case where a plaintiff alleges that a law enforcement officer unconstitutionally used deadly force, the officer's actions are judged by a standard of objective reasonableness. See Graham v. Connor, 490 U.S. 386, 396-97 (1989). And in demanding objective reasonableness, the court must evaluate the use of force

> from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation.

Id.

On the record before us, it is undisputed that Plunkett leveled a rifle at Officers Kanode and Bingeman, who were standing on his front stoop. When Plunkett began to move his right hand toward the trigger of the rifle, the officers were entitled to protect themselves. "No citizen can fairly expect to draw a gun on police without risking tragic consequences. And no court can expect any human being to remain passive in the face of an active threat on his or her life." Elliott v. Leavitt, 99 F.3d 640, 644 (4th Cir. 1996). We therefore agree with the district court's conclusion that the actions of Officers Kanode and Bingeman were objectively reasonable.

Stout argues that summary judgment was improper on two grounds. First, she claims that the threat posed by Plunkett was "precipitated" by the officers' attempt to illegally arrest Plunkett in his home without a warrant. This characterization of the facts, even if true, would not alter the analysis. The uncontradicted evidence shows that at the time Plunkett brandished his rifle, the officers had not effected an arrest and were still outside his home and that their

4

response to this lethal threat was made from outside of the house before Plunkett was in custody.

Stout also maintains that disputed issues of material fact preclude summary judgment. In particular, she claims that the officers' account of the events is not credible because they testified that Plunkett was facing them at all times when they were shooting, whereas the autopsy evidence indicates that many of the bullets struck Plunkett from the rear. But Officers Kanode and Bingeman testified only to their recollection that Plunkett never turned or spun away from them during the shooting. Indeed, Officer Kanode stated that "the events occurred so quickly, that I can't say for certain that he didn't spin around." In any case, it is immaterial whether Plunkett remained facing the officers throughout the shooting, which lasted only a few seconds. The material evidence in the record establishes that Plunkett pointed a loaded rifle at the officers. Under these circumstances, the officers were justified in responding with deadly force.

Because we conclude that the actions of Officers Kanode and Bingeman in the particular circumstances of this case were objectively reasonable, Plunkett's claim of excessive force must fail. For the same reason, Stout's challenge to the district court's alternative finding of qualified immunity would also fail. See Wilson v. Layne, 119 S. Ct. 1692, 1697 (1999) ("A court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all.") (citation and internal quotation marks omitted).* The judgment of the district court is therefore

AFFIRMED.

_____
*Because Stout's excessive force claim against the officers fails, Stout's claims against the City of Roanoke necessarily fail. See, e.g., Hinkle v. City of Clarksburg, 81 F.3d 416, 420 (4th Cir. 1996).

5