**Joyce WILSON and Val Wilson, Jr., as Administrator and Co–Administrator of the Estate of Jerome Leroy Mozee,**

v.

**CITY OF DES MOINES, a Municipal Corporation; Joseph Morgan, individually and in his official capacity as a Des Moines Police Officer; and Terry Mitchell, individually and in his official capacity as a Des Moines Police Officer.**

No. 4–99–CV–10254.

United States District Court,
S.D.Iowa,
Central Division.

July 25, 2001.

Alfredo G. Parrish, Maggi Moss, Parrish Krruidenier Moss Dunn & Montgomery LLP, Des Moines, IA, for Joyce Wilson and Val Wilson.

Mark Godwin, Des Moines City Attorney, Des Moines, IA, for City of Des Moines.

Guy R. Cook, Grefe & Sidney PLC, Des Moines, IA, for Joseph Morgan.

Harry Perkins, III, Patterson Lorentzen Duffield Timmons, Des Moines, IA, for Terry Mitchell.

## ORDER

LONGSTAFF, Chief Judge.

Trial involving plaintiffs' claims against the two police officers in this case is scheduled to begin on Monday, July 30, 2001. Defendants have brought two pre-trial motions that are now before this Court. The first was filed July 2, 2001 and is styled as a supplemental motion for summary judgment. Plaintiff filed a resistance to this motion on July 17. The other is an alternative motion in limine brought for the Court to rule upon only if it denies defendants' supplemental motion for summary judgment. Defendants brought this second motion on July 12, seeking to exclude the testimony of plaintiffs' police procedure expert witness. Plaintiffs resisted this second motion on July 20. This Court held a hearing on July 23.

This case involves a shooting by Des Moines Police Officers Joseph Morgan and Terry Mitchell which occurred on April 20, 1999. Defendants previously moved for summary judgment on grounds of qualified immunity, and this motion was denied by Judge Wolle on February 27, 2001. After reviewing the record and holding a hearing, Judge Wolle determined the reasonableness of the defendant officers' actions could not be determined from the record. The order stated that genuine issues of

material fact precluded summary judgment in defendants' favor, and provided a non-exclusive list of such factual issues.[1]

As Judge Wolle reported the undisputed facts in his February 27, 2001 order, the decedent, Jerome Mozee, allegedly was involved in an incident on Southeast 14th Street in Des Moines, Iowa in the early morning hours of April 20, 1999. Officers Morgan and Mitchell responded to a dispatcher's call to the scene. Upon their arrival, Morgan and Mitchell exited their vehicle and saw Mozee running into an unlit field. While in the unlit field, both officers fired their guns and their bullets killed Mozee. The record establishes Mozee was unarmed, though one or both officer state they thought they saw a firearm.

Defendants have given the Court two reasons in support of their supplemental motion for summary judgment; or more accurately phrased, defendants have stated two grounds for this Court to alter or amend Judge Wolle's previous ruling on their motion for summary judgment.[2] First, defendants argue the Supreme Court's decision in *Saucier v. Katz,* — U.S. ——, 121 S.Ct. 2151, 150 L.Ed.2d 272 (June 18, 2001) changed the landscape of qualified immunity. Second, defendants argue that disputed factual issues no longer exist as the testimony of plaintiffs' expert witness illustrates that such differences in the record do not exist.

In *Saucier,* the Supreme Court made clear the qualified immunity inquiry is distinct from the inquiry on the merits of a claim for excessive force. 121 S.Ct. at 2151 (involving "gratuitously violent shove" of animal protestor upon arrest at a public event where the Vice President of the United States was speaking). The Supreme Court set up a two-part inquiry to determine whether an officer is entitled to qualified immunity. First, courts are to determine whether a constitutional right would have been violated on the facts alleged. Second, if a violation is established, courts are to determine whether the right was clearly established "on a more specific level than recognized by the [Ninth Circuit] Court of Appeals." *Id.* at 2155. The *Saucier* Court further defined the second prong to mean that " '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Id.* at 2156 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Essentially, the Court rejected the approach taken by the Ninth Circuit and other courts to deny an officer's claim of qualified immunity any time there was a material issue of fact. The *Saucier* Court reiterated it is very

---

1. The February 27 order stated:

   Those issues of fact for trial include, but are not limited to: what information was dispatched to the defendant officers about the incident involving Mozee; what information was reported to the defendant officers at the incident scene; who reported the information to them; what words were exchanged between Mozee and the defendant officers; what distances separated Mozee and each of the defendant officers while he fled and when he stopped and turned; whether Mozee comported himself as if he was concealing a weapon; whether Mozee stopped and turned towards the officers in a shooting stance; and whether either or both officers saw a firearm or believed Mozee had a firearm.

2. While Federal Rule of Civil Procedure 59(e) authorizes a district court to perform the limited function of "correcting manifest errors of law or fact" or to allow a party to "present newly discovered evidence," *Innovative Home Health Care, Inc. v. P.Y.-O.T. Assoc. of the Black Hills,* 141 F.3d 1284, 1286 (8th Cir. 1998) (internal citations omitted), this Court will rule on this motion under the same standard for motions for summary judgment as stated by Judge Wolle in the February 27 Order.

important that the officer is on notice his conduct would be unlawful under the circumstances, and if the officer does not have such notice, summary judgment based on qualified immunity is appropriate. *Id.* at 2156–57 (citations omitted).

In the February 27 order, Judge Wolle analyzed plaintiffs' claims under the law as it stood before *Saucier* was decided. In the order he stated the governing objective-reasonableness standard for an excessive force claim, and went on in the ruling to detail the factual disputes that existed regarding the reasonableness of the officers' actions. This Court finds that Judge Wolle's analysis constitutes the first *Saucier* inquiry. If all of the factual disputes noted by Judge Wolle are resolved in favor of plaintiff, then Judge Wolle found, and this Court agrees, that a constitutional right would have been violated by the officers. Defendants now claim these disputes no longer exist as plaintiffs' expert witness' deposition testimony resolves the differences on the record. The record now before this Court indicates that not *all* of the specific factual issues listed in the February 27 order remain disputed between the parties. For instance, it appears there is not a dispute that upon the officers arrival at the scene, they were given at least some information the fleeing suspect (Mozee) had a weapon. However, defendants' argument that the testimony of plaintiffs' expert witness, Frank Saunders, resolves all factual disputes is incredulous. In his deposition, Saunders was questioned by the defendants' attorneys and in answering the questions would accept facts as stated by the attorneys. *See, e.g.*, Deposition of Frank Saunders, at 20.[3] The mere fact that he agreed with their assessment of certain facts does not resolve all

remaining disputed factual issues. Issues of fact clearly remain that will involve credibility determinations by the jury— such as whether Mozee comported himself as if he was concealing a weapon while he was running or when he stopped, and whether he stopped and turned toward the officers in a shooting stance. The record before this Court, including Saunders' deposition, does not resolve these issues.

The first prong of the *Saucier* test was applied by a district court just a few weeks ago in a case involving a police shooting in the context of a motion for summary judgment based on qualified immunity. In *Leong v. City of Detroit,* 151 F.Supp.2d 858, 863 n. 4 (E.D.Mich.2001), two police officers witnessed a driver of a vehicle commit a traffic infraction and attempted to stop it. *Id.* at 859. The driver of the vehicle refused to stop, and the officers then chased the vehicle down several streets and alleys. *Id.* at 860. The driver eventually drove down a dead-end street, and the officers pulled up behind his vehicle. *Id.* As the officers were about to exit their car, the suspect fired a shot from a shotgun into the roof of his own vehicle and exited it while holding his shotgun up in the air. *Id.* The suspect then loaded a new shell into the barrel of his shotgun. *Id.* The officers ordered the suspect to drop the shotgun, but he refused. *Id.* Without deciding whether the suspect had actually pointed the weapon at either of the officers or taken a "bladed" or shooting stance, the district court concluded as a matter of law the officers reasonably employed deadly force and the first element of *Saucier* allowed it to grant the officers qualified immunity as a constitu-

---

**3.** A portion of page 20 of Saunder's Deposition states:

Q: You agree, do you not, that given the facts that we've established here that we've established here that police officers in a

situation like that must treat Mr. Mozee as if he does, in fact, have a gun?
A: They must treat him that he potentially may be in possession of a weapon, yes.

tional right would not have been violated on the facts alleged. *Id.* at 868.

While not controlling or determinative, this Court has found the district court's opinion in *Leong* helpful even though it is factually distinguishable from this case because that court applied the new Supreme Court law in a factually relevant context. In *Leong*, the officers witnessed the suspect fire, load, and wield a shotgun while facing the officers after a chase that ended in a dead-end street. The actions of the suspect immediately prior to the shooting made the officers' use of deadly force reasonable, thus there was not a constitutional violation. In the case before this Court, there are genuine issues of material fact regarding the suspect's behavior immediately preceding the shooting. This is not a case where the officers *clearly* saw that the suspect had a weapon or where a weapon was ultimately found at the scene. Whether the officers reasonably employed deadly force to quell the threat posed by Mozee depends on his actions while he was running and when he stopped in the unlit field. The defendant officers alone can testify regarding this crucial time period and an assessment of their credibility will be essential to resolving these issues.

Moving to the second prong of the *Saucier* test, the law concerning when an officer may use deadly force when trying to arrest a fleeing suspect was prescribed in *Tennessee v. Garner*, 471 U.S. 1, 11–12, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

> [I]f the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

*Woolfolk v. Smith*, 81 F.3d 741, 742 (8th Cir.1996) (citing *Garner*, 471 U.S. at 11–12, 105 S.Ct. 1694) (determining the law of

when an officer may use deadly force is established). It thus appears to this Court that the second *Saucier* requirement is met.

In *Leong*, the district court in dicta observed that the second prong of *Saucier* could provide qualified immunity to a police officer in a case involving the use of deadly force. *Leong* indicates that even if an officer violates an individual's Fourth Amendment rights by the deployment of deadly force, the officer will still be entitled to qualified immunity under the second prong if "a reasonable officer could have concluded—albeit mistakenly—that deadly force was authorized under the circumstances." *Leong*, 151 F.Supp.2d at 864 n. 5. While this Court understands *Saucier* was designed to allow courts to grant officers qualified immunity on the second prong if the contours of the right are unclear with regard to the actions taken, in this case the disputed factual issues are far too intertwined with any legal uncertainty regarding when an officer may fire his weapon in accord with the rule of *Garner* for the Court to determine whether the officers made a reasonable mistake as to the law. Without having a sufficient record or a factual determination of Mozee's actions in the unlit field, the Court cannot determine what level of a threat Mozee posed to perform an analysis of whether the officer's mistake as to the law was reasonable.

Therefore, this Court finds that defendants are not entitled to qualified immunity based on the record now before it.

■ Turning to defendants' alternative motion to exclude the testimony of Saunders, the Court finds Saunders' testimony may prove to be assistive to the jury. FED. R. EVID. 702. Defendants are incorrect when they state Saunders' opinion that the officers should not have shot Mozee is irrelevant. While the Court agrees

that whether the officers saw a weapon is not determinative of whether they were allowed to use deadly force under the circumstances, Saunders' opinion is still relevant to answering the questions posed by *Garner* which will be contained in the jury instructions. *See* 471 U.S. at 11–12, 105 S.Ct. 1694, and *Grahm v. Conner,* 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (detailing the law of when an officer has used excessive force); *see also* EIGHTH CIRCUIT MODEL CIVIL JURY INSTRUCTION 4.10.

**For the aforementioned reasons, both of defendants' motions are hereby denied.**

IT IS SO ORDERED.