**Earlene HERBERT, Administrator of the Estate of Craig Guest, Deceased,**

v.

**John WILBUR, Individually and as a Police Officer for the City of Pittsburgh; City of Pittsburgh Earlene Herbert; LeRoy Wofford;** * **Estate of Craig Guest,** * **Deceased, Appellants.**

No. 01–2629.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) March 8, 2002.

Opinion Filed April 17, 2002.

Before BECKER, Chief Judge, ALITO and RENDELL, Circuit Judges.

OPINION OF THE COURT

PER CURIAM.

This is an appeal from summary judgment entered in favor of the appellees, police officer John Wilbur and the City of Pittsburgh. Because we write for the parties only, the background of the case need not be set out. Our review of the District Court's summary judgement is plenary. See *Olson v. General Elec. Astrospace*, 101 F.3d 947, 951 (3d Cir.1996).

## I.

As an initial matter, we agree with the District Court's conclusion that Officer Wilbur had a reasonable suspicion of car theft or other criminal activity when, at approximately 1:15 a.m., he saw three passed-out occupants of a car stopped in the middle of a major intersection wearing gloves (in June) with a screwdriver visible inside the car, especially where he had heard an earlier broadcast of an attempted car theft in the area. We also agree that Officer Wilbur had reasonable suspicion that Craig Guest was attempting to swallow contraband or evidence when he suddenly sat up and popped something in his mouth. (We note, however, that there is no evidence in the record that Guest had drugs in his system or was using drugs.)

Whether or not the ensuing tussle between Officer Wilbur and Guest resulted in an unlawful seizure under the Fourth Amendment, we reject the appellant's argument that we should adopt "a bright line rule" wherein an officer's unlawful seizure makes the officer liable for all of the harm that ensues from any subsequent use of force. We rejected this kind of "but for" causation in *Bodine v. Warwick*, 72 F.3d 393, 400 (3d Cir.1995). In *Bodine*, we stated that even when police action preceding the allegedly excessive use of force was unlawful, "under basic principles of tort law, [ ] the troopers would be liable for the harm 'proximately' or 'legally' caused by their tortious conduct .... not ... for all of the harm caused in the ... but-for sense." *Id.* (emphasis added). We also noted that the officers would not be liable for harm produced by a "superseding cause." *Id.* Our hypothetical in *Bodine* is instructive in this case:

Suppose that three police officers go to a suspect's house to execute an arrest warrant and that they improperly enter without knocking and announcing their presence. Once inside, they encounter the suspect, identify themselves, show him the warrant, and tell him that they are placing him under arrest. The suspect, however, breaks away, shoots and kills two of the officers, and is preparing to shoot the third officer when that officer disarms the suspect and in the process injures him. Is the third officer necessarily liable for the harm caused to the suspect on the theory that the illegal entry without knocking and announcing rendered any subsequent use of force unlawful? The obvious answer is "no." See *George v. City of Long Beach*, 973 F.2d 706 (9th Cir.1992), *cert. denied*, 507 U.S. 915, 113 S.Ct. 1269, 122 L.Ed.2d 664 (1993). The suspect's conduct would constitute a "superseding" cause, see Restatement (Second) of Torts, 442 (1965), that would limit the officer's liability. See *id.* 440.

*Id.*

Here, even if Officer Wilbur violated the Fourth Amendment when he struggled to pull Guest out of the backseat of the car, it does not follow that all of the subsequent damages were proximately caused by that violation. Following the Bodine hypothetical, when Officer Wilbur's hand was trapped in the car door and the driver drove off, dragging him along the pavement at speeds up to 70 miles per hour, this conduct was a superseding cause that appropriately cuts off Officer Wilbur's liability with respect to his use of deadly force in self-defense. This is the clear teaching of Bodine, and we decline to reject it here.

## II.

We also do not agree with the appellant's contention that there is sufficient evidence to support the theory that the officer shot Guest before his hand got stuck in the passenger side door and was subsequently dragged down Fifth Avenue.

Mary Nolan, a registered nurse who witnessed the events at the intersection of Shady and Fifth, testified that she never saw Officer Wilbur unholster or draw his gun, App. at 84, and that the last thing she heard before leaving the scene was the screeching-tires sound of the Honda fleeing the intersection, App. at 84. Robert Drysdale, a bystander, testified that at the intersection of Shady and Fifth, Officer Wilbur reached into the back seat of the Honda with his left hand and did not have a gun in his right hand. App. at 163. After the door closed on Officer Wilbur's hand, Drysdale also saw Officer Wilbur jump on top of the back trunk and grab with his right hand his free hand the other side of the car to hold on. Drysdale testified that, as the car sped down Fifth Avenue, Officer Wilbur fell off the trunk, was being dragged by his left hand, and only then, about a hundred yards later, were gun shots fired. App. at 167. Detective Foley, pursuing the Honda in his police car, stated that he witnessed Wilbur fall off the trunk of the Honda before shattered glass (from the bullets hitting the window) began falling from the car. App. at 130–31.

Although the appellant points to an expert's statement that "I find it hard to believe that the officer was able to fire his revolver while the car was traveling over 20 mph," the same expert stated that he could find no "inconsistencies in the contention that shots were fired only after the officer's hand was trapped in the door and the car had started to move." App. at 310 (emphasis added). The appellant also points to the forensics report to bolster the contention that shots were fired while Wilbur was on the trunk (i.e. before being dragged) because glass fragments were found in the back side of Guest's head, suggesting that the "bullet striking Craig Guest's head struck the rear windshield first." App. at 433. Appellant's conclusion assumes that at all times during the

chase Guest was sitting with his head facing forward. The presence of glass in the back of Guest's head could easily be explained if Guest was turned to the side perhaps looking out the back window to see how many police cars were chasing them when Officer Wilbur's shot fired into the side window and entered the back of Guest's head. Because of the unanimity of the testimony that shots were fired only after Officer Wilbur fell from the trunk and was being dragged, we conclude that there is insufficient evidence to support the contrary conclusion that Officer Wilbur shot his gun before that time.

III.

■ Finally, we address the question whether Wilbur's use of force was "objectively reasonable." See *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In *Abraham v. Raso*, 183 F.3d 279 (3d Cir.1999), we articulated the correct inquiry: "[W]as it objectively reasonable for the officer to believe, in light of the totality of the circumstances, that deadly force was necessary to prevent the suspect's escape, and that the suspect posed a significant threat of death or serious physical injury to the officer or others?" *Id.* at 289. The Supreme Court has stated that the proper application of this standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. In *Mellott v. Heemer*, 161 F.3d 117 (3d Cir.1998), we further elaborated that "[w]hen balancing these factors, we must remember that '[t]he "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id.* at 122

(quoting *Graham,* 490 U.S. at 396, 109 S.Ct. 1865).

Here, agree with the District Court that Officer Wilbur did not exercise unreasonable force in light of the totality of the circumstances. Officer Wilbur was being dragged by his left hand from a car as it sped down Fifth Avenue at speeds approaching 70 miles per hour. Fearing for his life, he shot his gun into the car hoping that this would make the driver stop the car. We are not willing to conclude on this record that Officer Wilbur's use of force was unreasonable given the totality of the circumstances.

We have considered all of the appellant's arguments and see no basis for reversal. The judgment of the District Court is therefore affirmed.