NOONAN, Circuit Judge,
dissenting:
Matthew Blanford, a twenty-year-old college student, was shot and rendered a paraplegic by the police of Sacramento County. The shooting occurred in broad daylight at Matthew Blanford’s residence where he lived with his parents. His “crime” had been bizarre behavior — he was on medication for bipolar disorder. At the timé that he was shot, he was not threatening the police or any other known person, and he was not attempting to escape. Under these circumstances, the important governmental interest served by sparing the two shooters a jury trial is the interest of protecting impatient officers for conduct for which the County of Sacramento awarded a citation.
The standards to be applied are well-known. Lethal force may not be employed unless necessary to prevent escape “and the officer has probable cause to believe that the suspect poses a significant threat of death or physical injury to the officer or others.” Tennessee v. Garner, 471 U.S. 1, 3, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). The reasonableness of the officer’s conduct is to be evaluated with “careful attention to the facts and circumstances of each particular case, including the severity .of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer and whether he is actively resisting arrest or attempting to evade arrest by flight.” Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Let us look at Matthew Blanford’s conduct in terms of these factors.
The severity of the-crime. The opinion alleges that Matthew Blanford had com *1120 mitted a violation of California Penal Code § 417.8, by raising the sword he carried and uttering some indistinct sounds not discernible as words. Blanford was not convicted of, nor charged with, committing this crime. His act would have been a crime if he had exhibited the sword with the intent to resist or prevent arrest. No showing of such an intent has been made. Blanford was walking away from the officers. He did not turn to confront them. The sword had been in sight from the beginning. Citizens had telephoned the police that the person carrying it had been seen licking it. Blanford’s alleged growl did not transform the ancient weapon into an instrument that he, while walking away, was using to threaten the police. His crime was not severe, it was nonexistent.
The immediate threat -posed to the safety of the officers. Matthew Blanford posed no immediate threat to the safety of the officers. As the opinion of the court observes, they kept a safe distance away from him. They always had their guns. He had nothing but the sword. He never threatened the police with it.
Actively resisting arrest. At no point did Matthew Blanford actively resist arrest.
Attempting to evade arrest. Because he did not stop after he was shot, Matthew Blanford could be seen as attempting to evade arrest. The attempt was feeble. He did not accelerate, he did not hide, he stood in his parents’ yard and was shot.
Having examined the objective circumstances that Graham directs us to, I find no crime, no immediate threat to the officers, no resistance to arrest, and a pathetic if possible attempt to evade arrest. The court says that the case is “difficult.” It is indeed difficult to say that a reasonable officer would not have known that he violated Matthew Blanford’s constitutional right to life and constitutional right to be free of police violence when the officer gunned him down at short range.
Let me add one further circumstance mentioned in Garner that might justify the use of lethal force: probable cause to believe that the suspect poses a significant threat of death or physical injury to the officer or others. As glossed by Graham, the significant threat must also be immediate. The officers have not been able to name a single human being who was significantly or immediately threatened by Matthew Blanford. What the officers have supplied is speculation: someone might have been in the house, although no one answered the door; someone might have been in a neighbor’s backyard if Blanford could have gotten there; Blan-ford might have entered the house through the garage, although no one knows whether the garage opened into the house.
Not only is there no evidence that any human person was in significant or immediate danger. The officers knew that Blanford had been walking the streets for some time without harming or endangering anyone. They also knew that a bizarre sword-carrier had been seen before in the neighborhood and had disappeared into it without harm or threat to anyone. So why did they need to use deadly force to restrain Blanford at his parents’ doorstep? If imagined persons and imagined emergencies constitute reason to shoot, no community is safe from officers too quickly frustrated and angered by being ignored.
The case is one that demands judgment by the citizens of Sacramento County assembled as a jury, not immunity for the injury-inflicting police.