# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 1, 2013

Lyle W. Cayce
Clerk

No. 12-20296

ROBERT R. TOLAN; MARIAN TOLAN,

                                        Plaintiffs - Appellants

v.

JEFFREY WAYNE COTTON,

                                        Defendant - Appellee

Appeals from the United States District Court
for the Southern District of Texas

ON PETITION FOR REHEARING EN BANC
(Opinion 25 April 2013, 713 F.3d 299)

Before JONES, BARKSDALE, and SOUTHWICK, Circuit Judges.

PER CURIAM:

The court having been polled, and a majority of the judges who are in regular active service and not disqualified not having voted in favor (Fed. R. App. P. And 5th Cir. R. 35), rehearing en banc is DENIED.

Voting for en-banc rehearing were: Judge James L. Dennis, Judge Jennifer Walker Elrod, and Judge James E. Graves, Jr. Voting against were: Chief Judge Carl E. Stewart, Judge Carolyn Dineen King, Judge E. Grady

Jolly, Judge W. Eugene Davis, Judge Edith H. Jones, Judge Jerry E. Smith, Judge Edith Brown Clement, Judge Edward C. Prado, Judge Priscilla R. Owen, Judge Leslie H. Southwick, Judge Catharina Haynes, and Judge Stephen A. Higginson.

Upon the filing of this order, the clerk shall issue the mandate forthwith. *See* Fed. R. App. P. 41(b).


ENTERED FOR THE COURT:


_/s/ Rhesa Hawkins Barksdale____
RHESA HAWKINS BARKSDALE
UNITED STATES CIRCUIT JUDGE

DENNIS, Circuit Judge, joined by GRAVES, Circuit Judge, dissenting:

I respectfully but emphatically dissent from the court's failure to rehear this case en banc. The panel opinion contains three serious errors that should be corrected by this court en banc or by the Supreme Court: (1) The panel opinion erroneously assumes that the Supreme Court's decision in *Pearson v. Callahan,* 555 U.S. 223 (2009), authorizes it to skip the first prong of the *Saucier v. Katz*, 533 U.S. 194 (2001), analysis and grant Sergeant Jeffrey Wayne Cotton qualified immunity, despite there being no argument or evidence that Cotton's actions were based on his reasonable mistake of law; consequently, the panel opinion does not correctly apply either prong of the *Saucier* analysis, but uses a confused jumble of parts of each prong to justify its decision and reach the wrong conclusion; (2) The panel opinion erroneously and misleadingly represents that there is no genuine issue as to any material fact in this case; (3) The panel opinion erroneously and misleadingly represents facts that are genuinely disputed as being undisputed.

**1.**

In *Saucier v. Katz*, the Court mandated a two-step sequence for resolving government officials' qualified immunity claims. First, "a court must decide whether the facts that a plaintiff has alleged (see Fed. R. Civ. P. 12(b)(6), (c)) or shown *(*see Rules 50, 56) make out a violation of a constitutional right." *Pearson*, 555 U.S. at 232(citing *Saucier*, 533 U.S. at 201). Second, "if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."

*Id.* Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right. *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

In *Pearson*, the Court held that while the sequence set forth in *Saucier* is often appropriate, it should no longer be regarded as mandatory. *Id.* at 236. "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* Importantly, the Court in *Pearson* did not change the substance or the purpose of the two *Saucier* prongs. It merely recognized that lower courts should have the discretion to decide whether following the two prongs in sequence as originally set forth by *Saucier* is worthwhile in particular cases. *Id.* at 242.

The panel opinion, in a very confused and erroneous manner, claims that it "do[es] not reach whether Sergeant Cotton's shooting Robbie Tolan violated his Fourth Amendment right against excessive force (as noted, the district court relied on this first prong of qualified-immunity analysis)." *Tolan v. Cotton*, 713 F.3d 299, 306 (5th Cir. 2013). Instead, the panel opinion concludes that "showing violation of a constitutional right does not end the inquiry when qualified immunity properly has been invoked. Sergeant Cotton is entitled, through summary judgment, to qualified immunity under the second prong of the analysis." *Id.*

After the panel opinion states that it will use only the *Saucier* second prong analysis to decide this case, one would expect it to address whether Cotton made a reasonable mistake of law in using deadly force against Robbie,

for that is the purpose of the second prong.[1] But it does not do so. Indeed, the panel opinion does not correctly apply either *Saucier*'s substantive first-prong factual analysis or its second-prong legal analysis. Instead, it applies an amalgam of the two: something that it called a second-prong legal analysis but which has all the earmarks of a first-prong fact-intensive inquiry. As a result, the panel opinion, in making a purported second-prong inquiry, fails entirely to assess whether an objective officer in Cotton's position could have made a mistake of law and instead performs what appears to be an erroneous, partial, and distorted *Saucier* first-prong analysis to conclude that summary judgment based on qualified immunity is proper. *See Tolan*, 713 F.3d at 307-08. Why does the panel opinion announce that, unlike the district court, it will not use the first *Saucier* prong to start its analysis of this case? A proper application of the first prong, including a proper application of summary judgment law as well as a proper application of *Graham v. Connor*, 490 U.S. 386 (1989), and *Pearson* would have correctly led only to the conclusion that there are genuine issues as to material facts whether Cotton objectively and reasonably feared for his life when he shot to kill Robbie; and that the parties' submissions, properly viewed favorably to the plaintiff, could show that the officer's conduct violated clearly established Fourth Amendment law. Why does the panel opinion say that it will use the *Saucier* second prong only, but end up using mostly first-prong language in its reasoning? A *Saucier* second-prong inquiry was not an appropriate starting point because Cotton never testified that he shot Robbie

---

[1] *See Saucier*, 533 U.S. at 205 ("The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.")

because he made a reasonable mistake as to the legal constraints on his particular conduct in this case. If the panel had asked and answered these questions it could have avoided its mistakes and the unfortunate circuit precedent it makes in this case.

## 2.

In pursuing its confused *Saucier* second prong analysis, the panel opinion further compounds its errors by representing that several genuinely disputed material facts are really undisputed and by incorrectly representing that the disputed facts are not material. Specifically, the panel opinion presumes that the Tolans' front porch was not well lit despite the plaintiffs' evidence that it was reasonably well lit by lights on the porch, in the yard, and from Officer John Edwards's car spotlight and his flashlight; that Marian Tolan was argumentative and refused orders to remain calm, though she and her husband testified that she was calm and merely explained to both officers that she and her husband owned the Nissan and house and that Robbie lived there with them; that Cotton merely guided Marian toward the garage door despite the Tolans' testimony that he dragged her and shoved her into the metal garage door; and that Robbie moved to intervene in Cotton's treatment of Marian, despite the Tolans' testimony and physical blood-spot evidence that indicated that Robbie had not moved toward Cotton when Cotton shot him. The parties also dispute whether Cotton slammed Marian against the garage door before or after Robbie began to get up, turned toward Cotton, and told him to unhand his mother; whether Robbie was kneeling or crouching when Cotton shot him; where Robbie's hands were and whether he reached toward his waistband; and whether Cotton issued any verbal warning before shooting Robbie with deadly force. Ultimately, the panel opinion's pro-defendant recitation of facts fails to address evidence that, when viewed in the light most favorable to the plaintiff,

creates genuine issues of material fact as to whether an objective officer in Cotton's position could have reasonably and objectively believed that Robbie posed an immediate, significant threat of substantial injury to him.

Resolving the disputed facts reasonably in favor of the plaintiffs, the evidence shows that when Cotton arrived at the Tolans' residence, the Nissan that Edwards had misidentified as stolen was parked in front of the house, Robbie and Cooper were prone on the porch and on the ground, respectively, Bobby—Robbie's father—had his hands against the other car in the driveway, and Marian—Robbie's mother, a middle-aged woman in her pajamas whom Cotton believed to be the homeowner—was explaining to Edwards that she and Bobby owned the Nissan while Edwards had his pistol trained on Robbie and Cooper. Marian and Bobby had already explained to Edwards that he was mistaken in believing the Nissan to be stolen, that they owned the house and the Nissan, that Robbie lived with them, and that Robbie and Cooper were their son and nephew, respectively. Robbie was prone on the porch toward and near the front door of the house. When Cotton arrived, Marian explained to Cotton that she and Bobby owned the Nissan, the house, and that Robbie was their son. Cotton immediately ordered Marian to move to the garage door. She began to comply, then stopped to again explain the officers' mistake to Cotton. Cotton grabbed her arm, pulled her to the garage, and slammed her up against it so hard that she slid to the ground. At this point, Cotton had a clear and full view of Robbie who was lying approximately 15 to 20 feet away. When Robbie saw and heard his mother being thrown against the garage door, he pushed himself up and turned around to face Cotton while saying, "get your fucking hands off my mom." Without issuing any warning, Cotton unholstered his weapon, pointed it at Robbie, and shot at him three times, striking him once in the chest. The force of the bullet drove him backwards against the front door,

7

leaving his blood stain near the front door. The bullet collapsed Robbie's lung and lodged in his liver. Robbie was squatting or on his knees when he was shot. Robbie had no weapon and had not made any sort of reaching movement toward his waistband. Edwards trained his weapon on Robbie when he heard Robbie speak, but did not issue a warning or fire his weapon. The officers found, belatedly, that the Nissan had not been reported stolen and that neither Robbie, Cooper, nor any of the Tolans were armed.

Taking the undisputed facts of this case and resolving the disputed facts reasonably in the nonmovant plaintiffs' favor, the summary judgment record clearly shows that a jury reasonably could find that Cotton used excessive force against Robbie and Marian and that he did not warrant qualified immunity because the law was so clearly established that an objectively reasonable officer in Cotton's position would have known that his actions violated Robbie and Marian's Fourth Amendment rights. Only by failing to adhere to proper summary judgment law and by misapplying the two-prong qualified immunity analysis was the panel opinion able to conclude otherwise.

## CONCLUSION

The panel opinion erroneously interprets the Supreme Court's decision in *Pearson* to authorize it not only to skip the first prong of the *Saucier* analysis, but also to misapply as its *Saucier* second-prong analysis an amalgam of both prongs, so that it applies neither prong fully and correctly. Also, the panel opinion misapplies summary-judgment law by dismissing undisputed facts as inconsequential and resolving material facts genuinely at issue in the defendant's favor rather than in favor of the plaintiff. If the panel opinion had applied the *Saucier* prongs correctly it would have concluded that the facts that the plaintiffs have shown make out a violation of their constitutional right to be free from excessive and deadly force by a police officer; that this right was

8

"clearly established" at the time that Cotton violated their rights by using excessive force against Marian Tolan and deadly force against Robbie Tolan; and that Officer Cotton is not entitled to qualified immunity because, under the facts shown by the parties' submissions, a reasonable jury could find that an objectively reasonable officer would have known that Robbie Tolan did not pose an immediate, significant threat to the officer's life and that the officer's use of deadly force without forewarning was therefore not justifiable.