WATFORD, Circuit Judge,
dissenting:
I would reverse on the Fourth Amendment excessive force claim. Our cases require that a jury be permitted to decide whether the force used by the officer against Jennifer Donovan was objectively reasonable or not.
The familiar framework from Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), guides the objective reasonableness analysis. That framework calls for balancing the severity of the force used by the officer against the government’s countervailing justifications for deploying that level of force. Id. at 396, 109 S.Ct. 1865; Young v. County of Los Angeles, 655 F.3d 1156, 1161 (9th Cir. 2011).
The level of force used here was not lethal, but it was nonetheless far from trivial. The officer walked up to Donovan and asked her, “Is there going to be a problem?” Then, without warning, he put her in a wrist lock and threw her to the ground, causing her to fall on her right shoulder. The fall injured Donovan’s rota-tor cuff, an injury that continued to hobble her two years after the incident occurred in October 2012.
Against that intrusion on Donovan’s Fourth Amendment interests, we must balance the government’s justifications for using that level of force. That inquiry entails examining, among other factors, the severity of the crime Donovan was suspected of committing, whether she posed an immediate threat to the safety of the officer or others, and whether she was actively resisting arrest or attempting to flee. Young, 655 F.3d at 1163. Whether Donovan posed a threat to the safety of the officer or others is the most important of these considerations. Id.
Each of these factors weighs in favor of a determination that the officer’s use of force was objectively unreasonable. First, the crime Donovan committed was, at most, a non-violent misdemeanor—disobeying the officer’s order to stay in the car, in violation of California Penal Code § 148(a)(1). We have previously observed that minor offenses of this sort “will tend to justify force in far fewer circumstances than more serious offenses, such as violent felonies.” Young, 655 F.3d at 1165. Second, taking the facts in the light most favorable to Donovan (as we must on summary judgment), Donovan posed no threat to the officer or anyone else. She got out of the car and took two or three steps in the officer’s direction with her hands outstretched, palms up, in a posture that merely asked, ‘What’s going on?” She was not acting aggressively and said nothing to the officer that could remotely be deemed threatening. And third, Donovan was not actively resisting arrest or attempting to flee—indeed, the officer had not yet told her she was under arrest when he threw her to the ground. She was doing nothing more than offering passive resistance by refusing to comply with the officer’s commands to stay in the car.
To determine whether Donovan’s Fourth Amendment rights were violated, “we must balance the amount of force applied against the need for that force.” Bryan v. MacPherson, 630 F.3d 805, 823-24 (9th Cir. 2010) (internal quotation marks omitted). In my view, a rational jury could strike that balance in Donovan’s favor. See Blankenhorn v. City of Orange, 485 F.3d 463, 478-79 (9th Cir. 2007). We have explicitly held that when confronted with a passively resisting suspect who po *615 ses no safety threat and is not attempting to flee, an officer may employ no more than trivial force to gain compliance. Nelson v. City of Davis, 685 F.3d 867, 881 (9th Cir. 2012). The law on this point was clearly established before 2012, so the officer had fair notice that using non-trivial force in these circumstances would be objectively unreasonable. See Gravelet-Blondin v. Shelton, 728 F.3d 1086, 1093 (9th Cir. 2013) (“The right to be free from the application of non-trivial force for engaging in mere passive resistance was clearly established prior to 2008.”). Applying a wrist lock and throwing someone to the ground cannot be deemed a trivial amount of force.
The officer attempted to justify his actions by claiming that he felt threatened by Donovan as she stood passively beside her car, palms up in a posture of inquiry. He testified that as he walked up to Donovan (who was herself a police officer for the State of California), she dropped one foot back into a “bladed stance,” which law enforcement officers are trained to adopt when preparing for a physical confrontation. But as the district court recognized, whether Donovan adopted such a stance is a disputed factual question that a rational jury could easily resolve against the officer, given the clarity of the videotape we have of the encounter. A jury could conclude from the videotape that Donovan did not adopt any stance—or do anything else—that could be interpreted as a sign of aggression or impending combat.
It is true that officers must be given latitude for having to make split-second judgments about how to react to rapidly unfolding events. Graham, 490 U.S. at 396-97, 109 S.Ct. 1865. But on these facts, even after granting the officer such latitude, I think a rational jury could conclude that the force used against Donovan was objectively unreasonable.