NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 16-3847 and 16-3859
_____

KEITH W. ANTHONY

v.

RICHARD SELTZER; RYAN ALLES; CITY OF ALLENTOWN;
MEHMET BARZEV; MATTHEW BRETT

Richard Seltzer; Mehmet Barzev; Matthew Brett,
Appellants *in No. 16-3847*

Ryan Alles,
Appellant *in No. 16-3859*
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 5-14-cv-05554)
District Judge:  Honorable Joseph F. Leeson, Jr.
_____

Submitted Under Third Circuit LAR 34.1(a)
June 13, 2017

Before:  JORDAN, KRAUSE, *Circuit Judges* and STEARNS[*], *District Judge.*

(Opinion Filed: June 14, 2017)
_____

---

[*] Honorable Richard G. Stearns, United States District Court Judge for the District of Massachusetts, sitting by designation.

_____

STEARNS, *District Judge*.

Appellants Richard Seltzer, Ryan Alles, Mehmet Barzev, and Matthew Brett appeal from the District Court's denial of qualified immunity from a claim of an excessive use of force against appellee Keith W. Anthony. We will affirm.

## I.    Background

As this appeal arises in the context of a motion to dismiss, we recite the facts as they appear in Anthony's Amended Complaint, drawing all plausible inferences in his favor. *George v. Rehiel*, 738 F.3d 562, 571 (3d Cir. 2013). On November 1, 2013, Anthony pulled his vehicle to the side of a road in Allentown, Pennsylvania, and crawled underneath to investigate the source of a radiator fluid leak. While beneath the vehicle, Anthony began suffering convulsions. A bystander called 911 and reported that Anthony was undergoing a seizure. Licensed emergency medical technicians (EMTs) Barzev and Brett arrived shortly thereafter in an ambulance. Alles and Seltzer, Allentown police officers, also responded to the scene. Barzev and Brett were initially unable to treat Anthony because of the severity of his involuntary convulsions and other seizure symptoms. Seltzer then drew his Taser (an electro-shock weapon) and used it to shock Anthony in the device's "drive

_____

[**] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

stun" mode, which is intended to induce compliance through the application of pain. The initial shock enabled Seltzer to handcuff Anthony. Anthony alleges that medical records indicate that he was then tased "in excess of a dozen times" by Seltzer and Alles, including after he was strapped to a gurney and loaded into the ambulance. The Complaint further alleges that Seltzer wrote a police report claiming that he tased Anthony only one additional time, and that at the request of Barzev and Brett. As a result of the multiple tasings, Anthony asserts that he was hospitalized with severe injuries, including burns and lacerations.

Anthony subsequently brought this suit against appellants and the City of Allentown under 42 U.S.C. § 1983, alleging a violation of his Fourth Amendment right to be free from excessive force.[1] Appellants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), invoking the protections of the doctrine of qualified immunity. The District Court denied the motion, *see Anthony*, 2016 WL 5561716, at *6, and this appeal followed.

---

[1] Anthony also asserted excessive force claims under the Eighth and Fourteenth Amendments, but the District Court dismissed those claims on the basis that they are more properly brought under the Fourth Amendment. *Anthony v. Seltzer*, No. 5:14-cv-05554, 2016 WL 5561716, at *4-5 (E.D. Pa. Sept. 30, 2016). That decision is not before us on appeal.

## II. Discussion

A district court's denial of qualified immunity based on a pure determination of law is immediately appealable under 28 U.S.C. § 1291, and our review is *de novo*. *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 240-41 (3d Cir. 2016).

Qualified immunity involves a two-part inquiry. Courts examine both "whether the plaintiff sufficiently alleged the violation of a constitutional right," and "whether the right was 'clearly established' at the time of the official's conduct." *Id.* at 241. In conducting the latter assessment, the Supreme Court has cautioned a reviewing court to avoid the temptation to "define clearly established law at a high level of generality," and must instead ensure that "the violative nature of particular conduct is clearly established." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). That said, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Thus, there need not be a prior case directly on point, so long as "the state of the law" provided "fair warning" that the conduct in question was unconstitutional. *Id.*

We begin from first principles. A claim that a state actor used excessive force in effecting a seizure is judged under the objective reasonableness standard embodied in the Fourth Amendment. *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015). Appellants do not contest that a Fourth Amendment seizure occurred.

4

We thus consider only whether their actions were reasonable. "[T]his inquiry is highly individualized and fact specific," and is conducted "from the perspective of the officer at the time of the incident and not with the benefit of hindsight." *Id.* Among the factors considered are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Appellants contend that in November of 2013, the law did not clearly declare it unreasonable to use a Taser to restrain a person in need of medical treatment. In support, they cite cases granting qualified immunity to officers who used Tasers to restrain a person in medical distress. In *Aldaba v. Pickens*, 844 F.3d 870 (10th Cir. 2016), for example, officers tased a mentally disturbed patient multiple times to prevent him from leaving a hospital and to give doctors the opportunity to treat him. *Id.* at 875-76. The Tenth Circuit held that "Tasering [the plaintiff] to hasten life-saving care" was not a clearly established violation of Fourth Amendment law. *Id.* at 879.

Appellants' argument, however, overlooks the fact that *Aldaba* and like cases involve the reasonableness of the use of force *to subdue* an individual in obvious need of medical attention. Here, the gravamen of Anthony's Amended Complaint (as the District Court correctly noted) is that the officers continued to

5

tase him – "in excess of a dozen times" – *after* he had been subdued, placed in handcuffs, strapped to a gurney, and loaded into an ambulance.[2] It comes as no surprise that, under long-established Fourth Amendment law, force may not legitimately be used against an individual who is compliant and poses no ongoing threat to himself or others, or who is not resisting arrest, even if he was initially non-compliant. *See, e.g.*, *Edwards v. Shanley*, 666 F.3d 1289, 1295-96 (11th Cir. 2012); *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 863 (7th Cir. 2010); *Krout v. Goemmer*, 583 F.3d 557, 566 (8th Cir. 2009); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004); *LaLonde v. County of Riverside*, 204 F.3d 947, 960-61 (9th Cir. 2000); *cf. Abraham v. Raso*, 183 F.3d 279, 294 (3d Cir. 1999) ("A passing risk to a police officer is not an ongoing license to kill an otherwise unthreatening suspect."). A number of circuits have concluded that it was clearly established prior to November of 2013 that this principle extends to the use of Tasers. *See Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016) (holding, with regard to 2011 conduct, that it was "clearly established that officers may not continue to use force against a suspect who is effectively subdued," including "repeated use of [a] taser against a subdued offender"); *accord Wate v. Kubler*, 839 F.3d 1012, 1021 (11th Cir. 2016); *Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir.

---

[2] Seltzer's alleged incident report implicates Barzev and Brett by attributing at least one of the post-restraint tasings to their instructions.

6

2015); *Meyers v. Baltimore County*, 713 F.3d 723, 734-35 (4th Cir. 2013); *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009); *Landis v. Baker*, 297 F. App'x 453, 464 (6th Cir. 2008).

Our own pre-2013 precedent is consistent with the general rule. In *Rivas v. City of Passaic*, 365 F.3d 181 (3d Cir. 2004), we addressed excessive force claims arising from the death of a man experiencing a seizure. There, three officers sought qualified immunity despite evidence that, after the victim was handcuffed, his feet were bound, and he was carried from his apartment on a stretcher, the officers "collectively pressed down on [the victim]'s back with all of their weight until he became still and unconscious" while awaiting the arrival of paramedics. *Id.* at 200. Under the circumstances, where the victim "did not present a threat to anyone's safety," we had no hesitation in concluding that the "continued use of force" made out a violation of the victim's clearly established rights. *Id.* In a sentence, it could not be questioned in November of 2013 that the continued application of force to an unthreatening and subdued individual suffering a seizure constituted an unreasonable use of force under the Fourth Amendment.

Appellants' response to this line of reasoning focuses on the factual allegations. They suggest that Anthony's Amended Complaint is internally inconsistent because he alleges that Barzev and Brett were unable to provide medical aid to Anthony because of his involuntary convulsions and other seizure

7

symptoms. This, they say, amounts to an implicit admission that Anthony was non-compliant for the duration of his seizure, making the continued tasing to enable medical treatment reasonable (or at least not clearly unreasonable). Yet the Amended Complaint, read in the light most favorable to Anthony, alleges only that Barzev and Brett were unable to provide aid before the first application of the Taser, not after Anthony was initially tased and handcuffed. To adopt appellants' reading would require drawing an impermissible adverse inference against Anthony at the pleading stage. *See George*, 738 F.3d at 571. This and other disputes of fact are to be resolved only after discovery, at which point it is open to appellants (as the District Court noted) to renew the request for qualified immunity (should the allegations of the Amended Complaint be disproved). The order of the District Court will be affirmed.