# SUPREME COURT OF THE UNITED STATES

### SELINA MARIE RAMIREZ, ET AL. *v.* JEREMIAS GUADARRAMA, ET AL.

#### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 21–778.   Decided June 30, 2022

The petition for a writ of certiorari is denied.

JUSTICE SOTOMAYOR, with whom JUSTICE BREYER and JUSTICE KAGAN join, dissenting from the denial of certiorari.

Petitioners, Selina Marie Ramirez and her two children, called 911 when Gabriel Eduardo Olivas (their husband and father, respectively) threatened to commit suicide and burn down the house. Ramirez and her children allege that, when the police arrived, two officers discharged their tasers at Olivas after he doused himself in gasoline in their presence, despite knowing from their training that tasers employ electrical charges that ignite gasoline, and despite a third officer's warning just moments earlier that "'[i]f we tase him, he is going to light on fire.'" 3 F. 4th 129, 132 (CA5 2021). As Ramirez and her son watched, Olivas indeed "burst into flames." *Ibid.* Ramirez and her children were safely evacuated, but Olivas died of his injuries, and the family's house burned to the ground.

When petitioners sued under 42 U. S. C. §1983, alleging in relevant part that the officers used excessive force in violation of the Fourth Amendment when they tased Olivas and lit him on fire, the officers moved to dismiss the complaint before discovery, claiming that qualified immunity shielded them from liability. The District Court denied the motions without prejudice, concluding that factual development was required before it could determine whether qual-

ified immunity was appropriate. The Fifth Circuit re-versed, granting qualified immunity to the officers as a matter of law. The court acknowledged that "use of a taser in unwarranted circumstances can be unconstitutional." 3 F. 4th, at 135. It concluded, however, that petitioners had not shown that Olivas had any "clearly established" "consti-tutional right not to be tased" and "caus[ed] . . . to burst into flames." *Id.,* at 132, 134.

The Fifth Circuit denied rehearing en banc. Judge Wil-lett joined by two other judges dissented, explaining that the Fourth Amendment violation was obvious if the "'par-ticularly egregious facts'" were accepted as alleged in the complaint. 2 F. 4th 506, 514 (2021) (quoting *Taylor* v. *Ri-ojas*, 592 U. S. ___, ___ (2020) (*per curiam*) (slip op., at 3)). As Judge Willett explained, the panel held to the contrary only by erroneously "blurr[ing]" the motion-to-dismiss standard with "something resembling summary-judgment review." 2 F. 4th, at 517–518. For instance, the panel con-cluded that the officers' use of deadly force was reasonable because Olivas "posed a substantial and immediate risk of death or serious bodily injury to himself and everyone in the house" and "the officers had no apparent options" other than to tase Ramirez. 3 F. 4th*,* at 135–136. The complaint, however, alleged that petitioners and the officers were not at immediate risk but at a safe distance away from Olivas, standing in a doorway such that they could immediately exit the room if Olivas lit himself on fire. Petitioners al-leged that officers were able to immobilize Olivas with pep-per spray and could have subdued him in that manner, but failed to do so. More to the point, the complaint alleged that the officers were aware that tasing Olivas would light him on fire and thereby "tur[n] risk into reality." 2 F. 4th, at 519.

For the reasons ably set forth by Judge Willett, I would summarily reverse the Fifth Circuit's grant of qualified im-

munity at the motion-to-dismiss stage, a stage at which petitioners' well-pleaded allegations must be accepted as true. According to those allegations, the officers elected to use force knowing that it would directly cause the very outcome they claim to have sought to avoid. That is, to prevent Olivas from lighting himself on fire and burning down the house, the officers tased Olivas just after they were warned that it would light him on fire. This Court's precedent establishes that "the 'reasonableness' of a particular seizure depends not only on *when* it is made, but also on *how* it is carried out." *Graham* v. *Connor*, 490 U. S. 386, 395 (1989). See *Tennessee* v. *Garner*, 471 U. S. 1, 7–8 (1985). Using deadly force that does no more than knowingly effectuate the exact danger to be forestalled is clearly unreasonable under this standard.

While "this Court is not equipped to correct every perceived error coming from the lower federal courts," it has deemed intervention appropriate where a Court of Appeals decision reflects a misapprehension of the standard for assessing excessive force claims at the stage of the litigation concerned. *Tolan* v. *Cotton*, 572 U. S. 650, 659 (2014) (*per curiam*) (internal quotation marks omitted) (summarily reversing grant of qualified immunity in a Fourth Amendment excessive force case to correct "a clear misapprehension of summary judgment standards in light of our precedents"). Factual development may reveal a different story, but, as relevant now, Ramirez and her family have plausibly alleged that the officers they called to prevent their husband and father's death instead used excessive force that predictably caused his death and the loss of their home. Under this Court's precedents, that claim is entitled to proceed to discovery to determine whether the family is entitled to some recompense for their unnecessary losses. I respectfully dissent.