**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAY 31 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

DONNA MARIE WILL,

No. 23-15779

Plaintiff-Appellant,

D.C. No.
2:20-cv-01529-KJM-AC

v.

ERIC CLAY, Chief; et al.,

MEMORANDUM[*]

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, Chief District Judge, Presiding

Submitted May 17, 2024[**]
San Francisco, California

Before: LEE and BRESS, Circuit Judges, and KANE,[***] District Judge.

Plaintiff Donna Will appeals the district court's summary judgment in favor

of Defendant Officer Eric Clay of the Tahama County Sheriff's Office. Will sued

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***]      The Honorable Yvette Kane, United States District Judge for the
Middle District of Pennsylvania, sitting by designation.

under 42 U.S.C. § 1983 alleging that Clay violated her Fourth Amendment rights by using excessive force during her 2017 arrest for obstruction of justice. The district court concluded that a reasonable jury could find Clay's use of force excessive, but held that he was entitled to qualified immunity because no clearly established law barred his conduct. We have jurisdiction under 28 U.S.C. § 1291, and "may affirm a summary judgment on any ground finding support in the record." *M & T Bank v. SFR Invs. Pool 1, LLC*, 963 F.3d 854, 857 (9th Cir. 2020) (citation omitted). We affirm on the ground that Clay did not use excessive force.

"The Fourth Amendment protects against unreasonable seizures," and "[a]n arrest is the 'quintessential seizure of the person.'" *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022) (citation omitted). But "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 395 (1989). In evaluating an excessive force claim, we must determine "whether the officers' actions were objectively reasonable in light of the facts and circumstances confronting them." *Williamson*, 23 F.4th at 1151 (internal quotation marks and citation omitted). In so doing, we generally assess: "(1) the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted, (2) the government's interest in the use of force, and

2

(3) the balance between the gravity of the intrusion on the individual and the government's need for that intrusion." *Id.* at 1151 (citation omitted).

1. <u>The use of force was minimally intrusive.</u>  In determining how severely Clay intruded on Will's Fourth Amendment rights, we consider the "nature and degree of physical contact" and "the 'risk of harm and the actual harm experienced.'" *Id.* at 1152 (citations omitted).  In *Williamson*, we concluded that the type and amount of force used by police officers in removing a protester from a city council meeting was minimal, where the officers pulled Williamson backward out of a meeting room, handcuffed and screaming, "after she went limp and refused to leave on her own or cooperate in being removed." *Id.* at 1150, 1152.  We reasoned that the "Officers did not strike Williamson, throw her to the ground, or use any compliance techniques or weapons for the purpose of inflicting pain on her." *Id.* at 1152.  And we further observed that Williamson's injuries—"a sprained wrist, mild swelling, and a torn rotator cuff"—were consistent with prior cases finding only a minimal use of force. *Id*; *compare Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021) (finding that a takedown in which officers held Rice's arms behind his back and tripped him, causing him to fall face-first onto the pavement, "involved a 'substantial' and 'aggressive' use of force").

Here, no reasonable jury could find that Clay's use of a reverse twist control hold in arresting Will was more than minimally intrusive.[1]  Will does not allege she was seriously harmed, and she has not submitted any medical records documenting any injuries.  *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) (finding that appellant's claim of injury was unsupported where appellant failed to provide any medical records in support of her claim of injury as a result of handcuffing).

2.  <u>The government had some interest in using force.</u>  To evaluate the government's interest in using force, we consider: "(1) how severe the crime at issue was, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight."  *Williamson*, 23 F.4th at 1153.  While the second factor is the "most important," these factors are "non-exhaustive," for we must also "examine the totality of the circumstances, including the availability of less intrusive alternatives to the force employed and whether proper warnings were given."  *Id.* (citation omitted).

---

[1] Although Will stresses that Clay's rifle "banged against [her] body" several times when he attempted to handcuff her, the district court properly noted that this inadvertent contact was not a use of force but rather "a result of the physical movements [Clay] made to effect the arrest."

Will argues that she only passively resisted Clay's use of force, but "[e]ven passive resistance may support the use of some degree of governmental force if necessary to attain compliance." *Id.* Here, Will's conduct left Clay with few choices in carrying out the warrant, as she refused to step aside despite repeated warnings of her imminent arrest. *See id.* at 1154 (finding use of minimal force justified where the officers' "choice was to allow the protesters to remain in the city council's meeting room until they chose to leave on their own—which the constitution does not require—or to forcibly remove them").

Will likewise argues that Clay should have given her a chance to submit to the arrest or warned her of the imminent use of physical force. *See Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1092 (9th Cir. 2013). But no further admonitions were constitutionally required here: Will received five warnings that she would be arrested if she did not cease her obstructionism, and Clay afforded her a three-second countdown before placing her under arrest.

3. <u>The balance of interests weighs in Clay's favor.</u> On balance, Clay had an interest in employing minimal force to induce Will's compliance, and he did just that. His failure to afford Will yet another chance to voluntarily submit to an arrest does not outweigh the government's "legitimate interest[] in maintaining order" and ensuring compliance with the law. *Williamson*, 23 F.4th at 1154.

We hold that Clay did not use excessive force in violation of the Fourth Amendment in arresting Will, and affirm the district court's summary judgment in his favor. And even if Clay's use of force could be considered excessive—which it was not—we would still agree with the district court that Clay was entitled to qualified immunity because, at the very least, the asserted unlawfulness of Clay's conduct was not clearly established. *See District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).

**AFFIRMED.**