In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 24-3110

JUAN MENDEZ,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO, *et al.,*

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:18-cv-06313 — **LaShonda A. Hunt,** *Judge.*

---

ARGUED NOVEMBER 14, 2025 — DECIDED DECEMBER 3, 2025

---

Before SCUDDER, ST. EVE, and JACKSON-AKIWUMI, *Circuit Judges.*

SCUDDER, *Circuit Judge.* This is a tragic case involving a police encounter in the Austin neighborhood of Chicago. Officers Christian Szczur and David Cook responded to a notice early one morning that a shot had been fired in the area. While investigating the gunshot, they approached Juan Mendez on the front porch of his home. Mendez ran away, and a foot chase ensued. During the chase, Officer Cook warned Officer

Szczur that Mendez had something in his waistband and then in his hand. Mendez fell while running, got up, and looked back at the officers. As he did so, his right arm swung toward them with some sort of object in his right hand. Officer Szczur made a split-second decision and shot Mendez three times—only about 18 seconds after the foot chase started. The shots left Mendez paralyzed from the waist down, and this action under 42 U.S.C. § 1983 followed. The district court found no Fourth Amendment violation under the totality of the circumstances and relied on qualified immunity in the alternative. We affirm.

## I

### A

We draw most of the facts from Officer Cook's body-camera footage and otherwise from the summary judgment record.

In the early morning of May 26, 2018, while it was still dark, Juan Mendez fired a handgun outside of his home in Chicago. The Chicago Police Department detected the gunshot using ShotSpotter technology, which resulted in a radio alert of a shot fired around 5235 West Ohio Street. Officers Szczur and Cook responded and arrived near that address within about two minutes.

Upon arriving, Officer Cook saw Mendez and a juvenile on a nearby porch. Neither he nor Officer Szczur saw anyone else in the area. Officer Cook stood at the gate of the home alongside the sidewalk and exchanged a few brief words with Mendez and the juvenile. Officer Szczur then joined him and opened the gate. He asked Mendez and the juvenile, "You guys don't have anything on you you're not supposed to

have, right?" and entered the front yard while telling them to stand up. Mendez remained seated and did not respond. As Officer Szczur walked up the porch stairs, Mendez stood up, jumped off the porch and over a fence, and began running down an alleyway.

The two officers gave chase. Before turning down the alley, Officer Szczur stated, "I'll shoot you." Officer Cook yelled from up ahead, "Waistband," "Waistband," "Waistband," "Keep your hands up," and "Hands up." He then shouted, "He's got it in his hand." Mendez fell down at approximately this same time, allowing the officers to get closer to him. Mendez got back up and looked back over his right shoulder. As he turned, his right hand and arm swung in the officers' direction. Officer Cook's body-camera footage shows Mendez was holding something in his right hand. But the video lacks sufficient clarity to identify or discern the object with any certainty.

Officer Szczur then yelled, "I'll shoot you," and immediately shot Mendez three times. One bullet struck Mendez's right shoulder, and the others struck his lower back. Mendez fell to the ground, and a gun landed about 10 feet in front of him. All of these events happened very quickly, within seconds. While lying on the ground, Mendez stated he "wasn't going to shoot." The gunshot wounds have left him paralyzed from the waist down.

B

Mendez sued the City of Chicago, Officer Szczur, and Officer Cook. He brought several claims, including a Fourth Amendment excessive-force claim against Officer Szczur, an Illinois law battery claim against Officer Szczur, and an

indemnification claim against the City of Chicago for Officer Szczur's actions. Following discovery, both sides moved for summary judgment, and the district court granted the defense motion.

The district court rejected the Fourth Amendment excessive-force claim largely based on the body-camera footage. It acknowledged that the footage was too unclear to establish that Mendez had pointed a gun at the officers. But it concluded that the video was clear enough to show that Mendez had swung his arm toward the officers with something in his hand. That fact, combined with the surrounding circumstances, convinced the district court that a reasonable officer in Officer Szczur's position would have had probable cause to believe that Mendez threatened the safety of the officers or others. It then explained that Mendez could not win on the relevant state law claims without winning on his Fourth Amendment claim.

Mendez now appeals.

## II

"A claim that a law enforcement officer used excessive force during a stop or arrest is analyzed under the Fourth Amendment." *Barnes v. Felix*, 605 U.S. 73, 79 (2025) (cleaned up). "The touchstone of the Fourth Amendment is reasonableness, as measured in objective terms." *Id.* (cleaned up). Assessing the "reasonableness of police force requires analyzing the 'totality of the circumstances.'" *Id.* at 80 (quoting *County of Los Angeles v. Mendez*, 581 U.S. 420, 427–28 (2017)). This requires "'careful attention to the facts and circumstances' relating to the incident, as then known to the officer." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

"Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); see also *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021) (reinforcing this rule); *Est. of Biegert v. Molitor*, 968 F.3d 693, 700 (7th Cir. 2020) (same).

## A

Having taken our own close and independent look at the record, we conclude that Officer Szczur had probable cause to believe that Mendez posed a threat of serious physical harm under the totality of the circumstances. See *Barnes*, 605 U.S. at 80. He and Officer Cook arrived at the scene to investigate a gunshot notice only two minutes or so after receiving the radio dispatch. He approached Mendez on the porch only to see him jump a fence and run down an alleyway in response. Officer Szczur chased Mendez while hearing Officer Cook yell, "Waistband," "Waistband," "Waistband." He then heard Officer Cook shout, "Hands up," and "He's got it in his hand." At this point, Officer Szczur saw Mendez fall, get back up, and look over his right shoulder at the officers. As Mendez turned, Officer Szczur saw his right arm swing in the officers' direction with something in his hand. All of these circumstances combined to make Officer Szczur's use of force reasonable.

## B

Mendez insists that we cannot rely on Officer Cook's body-camera footage because it is too unclear. He is right to a certain extent. The video is shaky, the lighting poor, and the events happened fast. These weaknesses keep it from definitively establishing that Mendez pointed a gun at the officers.

See *Kailin v. Vill. of Gurnee*, 77 F.4th 476, 481 (7th Cir. 2023) ("Video evidence … can eviscerate a factual dispute only when the video is so definitive that there could be no reasonable disagreement about what the video depicts."). Mendez's counsel has done a fine job persuading us of this much.

But a video can be unclear for one purpose and clear for another. See, *e.g.*, *Pam v. City of Evansville*, 154 F.4th 523, 529 (7th Cir. 2025) (treating video as inconclusive as to whether the plaintiff "raised a weapon before the officers shot him" but conclusive as to whether he "behaved in a manner consistent with wielding a firearm"). And this video shows with sufficient clarity that Officer Szczur saw Mendez run away, heard Officer Cook yell warnings, and witnessed Mendez turn toward the officers with some object in his raised hand, which is consistent with Officer Szczur's testimony. That is enough.

Do not misinterpret what we are saying: video evidence enjoys no special status in law by virtue of being video evidence. It is not infallible. At the summary judgment stage, courts must always view facts in the light most favorable to the nonmoving party "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting Fed. R. Civ. P. 56(c)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* Any type of evidence can perform this function, including videos. See *Pam*, 154 F.4th at 529. "But like any other evidence, videos that are 'unclear, incomplete, and fairly open to varying interpretations' cannot resolve evidentiary matters short of trial." *Id.* (quoting *Horton*

*v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018)). That rule does not change today. Plenty of videos will leave enough unresolved to warrant trial. See, *e.g.*, *Smith v. Finkley*, 10 F.4th 725, 747–750 (7th Cir. 2021) (dismissing interlocutory qualified immunity appeal where video was open to interpretation).

## C

Resolving Mendez's Fourth Amendment claim also resolves his pertinent state law claims. As to the battery claim, Illinois law provides that a "public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 Ill. Comp. Stat. 10/2-202. Officer Szczur's use of force cannot be considered willful and wanton for the same reasons it was reasonable under the Fourth Amendment. See, *e.g.*, *Ybarra v. City of Chicago*, 946 F.3d 975, 981 & n.1 (7th Cir. 2020). Officer Szczur's lack of liability causes the indemnification claim to fall away too. See, *e.g.*, *Tolliver v. City of Chicago*, 820 F.3d 237, 246–47 (7th Cir. 2016).

For these reasons, we AFFIRM.